HILL and another vs. THE STATE.

*March 16 — April 4, 1883.*

CRIMINAL LAW AND PRACTICE. *(1) Larceny: intent. (2, 3) Instructions to jury.*

1. If there is no felonious intent at the time of the hiring of a horse, no subsequent conversion thereof will amount to a felony.
2. The practice of charging the jury orally and extemporaneously in criminal cases, criticised by ORTON, J.
3. Where an oral instruction correctly stating the law is wrongly reported so as to be incorrect, and is afterwards read to the jury as reported, the error is as great and material as if the instruction had been wrongly given in the first instance.

ERROR to the Municipal Court of *Milwaukee* County.

The plaintiffs in error were convicted of larceny. The facts sufficiently appear from the opinion.

The cause was submitted for the plaintiffs in error on the brief of *A. C. Brazee*, as attorney, and *J. C. McKenney*, of counsel, and for the defendant in error upon the record.

ORTON, J. The information was for the larceny of a horse, the property of the Hon. Silas Barber, the keeper of a livery stable in the city of Waukesha. The defendant *Lawrence*, on the 10th day of September, at five o'clock in the afternoon, hired the horse, with a top buggy, to go to a place called Honeyakers, about three miles from Waukesha, to be returned at nine or ten o'clock that evening. The defendant *Hill* was taken into the buggy before leaving Waukesha, and a short distance from that place on the road to the city of Milwaukee the buggy was turned over and the top torn off and left, and they drove on together to Milwaukee that night. The next day *Hill* was at Oak Creek, in Milwaukee county, on the road to Racine, with the horse and a part of the harness, and tried to sell the horse there and was arrested, and *Lawrence* was arrested in Milwaukee. They both

prevaricated as to their names, residence, and destination. The municipal court of the county of Milwaukee refused the following instruction asked on behalf of the defendants: "That if the defendants, at the time said horse was hired, had not intent to steal it, the subsequent appropriation of the same to their own use is a mere conversion and is not larceny." And the court gave the following instruction, which was excepted to on behalf of the defendants: "If you believe their statements against Barber's and his man's that was in the stable at the time, that they hired the horse for an indefinite purpose and agreed to be back before ten o'clock at night, and that they afterwards went to Milwaukee *and formed a design to sell the horse after that time, at any time before they were caught, you will be justified in finding they had that intention at the time they took the horse.*"

The instruction refused substantially expressed the law, and ought to have been given, and the instruction given was clearly erroneous, because against the law so expressed. It may at one time have been considered the law of larceny that although the hiring and taking, in the first place, might have been *bona fide*, yet if the time for which the hiring was made had expired and the property is afterwards converted, it is larceny. But such has not, for a long time, been considered the law, and it is now stated correctly as follows: That " when the horse was delivered on a hire or loan, and such delivery was obtained *bona fide*, no subsequent wrongful conversion, pending the contract, would amount to a felony." 2 Russ. on Crimes (9th ed.), 237. " When the possession was obtained *bona fide*, the mere fact of the subsequent existence of the *animus furandi* does not make the offense larceny." 2 Whart. Crim. Law, § 1860. The exception to this rule has no application to this case. " If one hires a horse and sells it before the journey is performed, *or sells it after, before it is returned*, he commits no larceny, in a case where the felonious intent came upon him subse-

quently to receiving it into his possession." 2 Bish. Crim. Law, § 864.

This statement of law should be qualified by saying, if he hires the horse in the first place with a *bona fide* intention of returning it according to the contract of hire, the circumstances of the conversion of the property subsequently, and of not even entering upon the performance of the contract of hire, but taking the property elsewhere, and of other matters evincing it, may be evidence of an intention to convert the property at the time of the hiring. But a subsequent conversion of the property merely may not be sufficient evidence of such an original intent. In a case, very similar to this in its facts, of *Regina v. Brooks*, 8 Car. & P., 295, it is held that the subsequent offer to sell the property was not considered sufficient evidence of the felonious hiring or taking in the first place, unless from the circumstances it appears that the hiring was only a pretext, made use of to obtain the property for the purpose of afterwards disposing of it.

The law applicable to this case is as well stated in *Semple's Case*, 2 East's P. C., 691, as in any which can be found in the books: "It is now settled that the question of intention is for the consideration of the jury, and if, in the present case, the jury should be of opinion that the original taking (of the property) was with the felonious intent to steal it, and the hiring a mere pretense to enable him (the prisoner) to effectuate that design without any intention to restore it or pay for it, the taking would amount to a felony; . . . but if there was a *bona fide* hiring and a real intention of returning it at that time, the subsequent conversion of it could not be a felony." See, also, *Pear's Case*, id., 685; *Charlewood's Case*, id., 689. The principle is more briefly stated (id., 665): "If it be proved that there was no trespass or felonious intent in *taking* the goods, no subsequent conversion of them can amount to a felony." These authorities were furnished by the learned counsel of the plaintiffs in

error, in his brief, and are amply sufficient, we think, to show the error complained of.

On motion to correct the bill of exceptions, it appears that it is the recollection of the learned judge before whom this case was tried, and that it is the recollection of some other persons, that the above instruction was not given to the jury, but that the instruction orally and actually given was the reverse, and that the instruction was that "you will *not* be justified in finding," etc.

It is especially unfortunate and dangerous in criminal cases that the statute allows instructions to be given to a jury *orally* by the judge, and to be regretted that judges avail themselves of the personal benefit of the statute. It is hardly possible for any judge to extemporize and *orally* declaim those principles of law applicable to the case, which in the books are found clearly and tersely expressed in " words fitly spoken." Perspicuity and certainty are essential in legal expressions, and there should be no doubt, ambiguity, or chance of questionable construction in any language, word, or sentence in a judge's charge of the law to the jury. The law is worthy of studied and correct expression anywhere and in all cases, and especially so when it is sought to be stated to the jury not versed in it or over ready to apprehend its meaning. I speak for myself when I say that the practice of oral instructions to the jury not committed to memory beforehand is not only pernicious as it affects the rights of parties to the suit but in the uncertainty afterwards as to what the instructions really were in word and meaning. The omission of one single word, as in this instance, may change the meaning of a whole sentence and principle of law. The judge, in the mental effort to grasp the principles and compose his sentences to express them under such disadvantage, may easily omit a word or use a wrong one, unconsciously to himself, and he cannot in any case retain in memory every word he used or omitted in a charge of the

usual length, under such a practice. The learned judge in this case appears honestly to have but little or no doubt but that he used the word *not* in the above instruction, and the phonographic reporter appears to have as little doubt but that he did not use it, and he therefore insists upon the correctness of his *verbatim* report of the instruction. One of the jurors states his recollection that that word was not used in that connection in the charge of the court, and the phonographic report with the *not* omitted was read to the jury on their coming into court for further instructions.

The instruction was a vital one, and if one of the jury understood the instruction as it is in the bill of exceptions, it might have affected the verdict. But, besides the error of this instruction, we think the above instruction, asked and refused, ought to have been given, in order to meet that particular phase of the case which involved the legal effect of a subsequent conversion of the property upon the question of the original intent with which it was taken or hired, and as to the time when the felonious intent must be formed to constitute the crime of larceny.

The learned judge may be correct in his recollection, and the reporter may have wrongly reported in this particular, but the error is as great and material by the reading of the report to them, and the understanding of the jury of the instruction as it now appears in the record, as if it had been wrongly given in the first place.

*By the Court.*— The judgment of the municipal court is reversed, and the cause remanded for a new trial. And it is ordered that the warden of the state prison deliver the defendants into the custody of the sheriff of Milwaukee county, to be safely kept by him for trial, or until duly discharged from his custody according to law.