Decided 3 June, 1902.

## STATE *v.* HOWARD.

[69 Pac. 50.]

LARCENY OF HORSE—CHANGING BRAND—INSTRUCTION.

1. In trials where a defendant is charged with an offense the evidence to support which may show the commission of a somewhat similar but really different offense, the jury should be clearly instructed as to the difference between the two, and that defendant must be shown to be guilty of the one described in the indictment: thus, a defendant being on trial for horse stealing, under Section 1766 of Hill's Ann. Laws, and it appearing that after getting possession of the horse defendant changed the brand, which is an independent offense under Section 1769 of Hill's Ann. Laws, it is error not to instruct the jury, when requested to do so, that if the animal was taken without an intention to steal it, the subsequent alteration of the brand was immaterial;

41 OR.—4.

since the two acts are distinct, and the jury may quite possibly have understood that the changing of the brand would justify a conviction for stealing.

IDEM.

2. The refusal to give such instruction was not cured by giving an instruction that, if the horse was taken in good faith, with the intention of returning it to its owner, a subsequently conceived intention to wrongfully convert it would not constitute larceny.

From Baker: ROBERT EAKIN, Judge.

Manny Howard appeals from a sentence for larceny.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Chas. A. Johns* and *Geo. J. Bentley.*

For the state there was a brief over the names of *Samuel White,* District Attorney, and *A. B. Winfree,* with an oral argument by *Mr. White,* and *Mr. John McCourt.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The defendant was convicted of the crime of larceny by stealing a mare, the property of R. R. Palmer and H. E. Denham. The facts are substantially as follows: In the spring of 1901 the defendant and one Meldrum, jointly indicted with him, were riding the range in Baker County, gathering up horses; about the 1st of April Palmer told them he had an I C mare out, and asked them if they found her to take her up, and hold her for him; a few days later they found the animal, and drove her, with other horses, to what is known as the "Deal Corral," where, the next morning, defendant, Howard, changed her brand from I C to H O, by what is known as the "picking process." She was then driven with the band to Meldrum's premises, twelve or fifteen miles distant. About this time Palmer heard that the defendant had his animal, and telephoned Howard, inquiring about the matter. Howard said, yes, they had the mare, and asked what he should do with her, when Palmer told him to leave her in his field when he came down the following Thursday. Shortly thereafter Palmer

learned that all the horses except his had been driven to Ontario for shipment. He went out to the Meldrum place, and got the mare, not thinking, as he testifies, that anything was wrong, until he noticed the brand had been changed.

1. Upon the trial the defendant requested the court to instruct the jury, among other things, that if Howard and Meldrum, acting together, or either of them, took possession of and held the mare alleged to have been stolen, under an agreement with the owner, and with no intention at the time of the taking of stealing her, it would make no difference whether the brand was changed or not, and that, if they should so find, they should disregard any and all evidence as to the change of the brand. The court refused to give the instruction as requested, but did charge the jury generally that a felonious intent must accompany the taking to constitute larceny; that, if the defendant took the mare from the range under the direction or by the agreement or consent of the owner, in good faith, with the intent only to return her to the owner, then a subsequently conceived intention to wrongfully convert her to his own use would not constitute the crime charged; that, although the defendant may have been requested by the owners of the animal to take possession of her, he would, nevertheless, be guilty of larceny, if, at the time of the taking, he had a felonious intent to appropriate her to his own use.

Section 1766, Hill's Ann. Laws, under which the defendant was tried and convicted, provides that, "if any person shall commit the crime of larceny by stealing any horse, gelding, mare, * * such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than ten years," etc. The evidence of the changing of the brand after the mare was taken up from the range and while in the Deal Corral was one of the most important items against Howard. Indeed, without this testimony, it is doubtful whether a conviction could have been had. Now, by Section 1769, Hill's Ann. Laws, it is made a crime for any person to willfully and knowingly alter or deface any artificial brand on any horse, mare, etc., with the intent thereby to convert the

same to his own use. The crime thus defined is entirely different from the crime of which defendant was accused and convicted. The proof, however, was such as tended to show the commission of either offense. It was, therefore, very important to the defendant that the court, in its instructions, should point out to the jury the distinction between the two crimes, and should clearly state the rules by which they were to be guided in arriving at the verdict, so that he might not be convicted of one crime on proof of the commission of another. To secure a conviction under the information upon which the defendant was tried, it was necessary for the state to prove that the animal in question was taken with a felonious intent at the time of the taking. If there was no intention of stealing her at that time, such an intention subsequently formed would not be sufficient. Proof of the change or alteration of the brand was, of course, material and important as tending to show the purpose and intent with which the defendant took possession of the animal, but would not be sufficient to convict, unless the jury believed that the original taking was with a felonious intent. Larceny by stealing an animal and larceny by altering the brand thereon are, under the statute, separate and distinct offenses, and proof of one will not necessarily sustain a conviction of the other. Appreciating the danger of the jury becoming confused on this point, and desiring to avoid a conviction for altering a brand under an information charging larceny by stealing the animal, the defendant requested an instruction that, if possession of the animal was taken with no intention at the time of stealing her, it would be immaterial whether the defendant subsequently changed the brand, or not. In our opinion, this instruction ought to have been given. It was an important point in the case, and was not covered by the general charge. There is nothing whatever said in the instruction, as given, about the effect of altering the brand; nor were the jury advised in any way that the mere altering of the brand with the intent to convert the animal to the defendant's own use would not be sufficient to convict him of the crime charged in the information; if, as a matter of fact, he took her from

the range in good faith, and with an honest intent to return her to the owner.

2. The instruction that, if the defendant took the animal in good faith, and with the intent only to return her to the owner, a subsequently conceived intention to wrongfully convert her to his own use would not constitute larceny, was sound, as to the general rule of law, but it was not sufficiently definite for the guidance of jurors not skilled in the application of abstract principles to concrete facts. It is a fundamental principle of the common law that a defendant cannot be tried for one crime and convicted of another. As the proof in this case tended to show either the crime of larceny by stealing, for which the defendant was being tried, or the crime of larceny by altering the brand, another separate and distinct crime, it was important that the jury be clearly and distinctly instructed as to the rule which should govern them in arriving at their verdict: *Boyd* v. *State,* 24 Tex. App. 570 (6 S. W. 853, 5 Am. St. Rep. 908) ; *Williams* v. *State,* 40 Fla. 480 (25 South. 143, 74 Am. St. Rep. 154). It is manifest that otherwise the defendant might have been convicted of one crime under an information charging him with another. In the absence of the instruction requested, or of one substantially the same, the jury might and could have found that the original taking was by the consent of the owner, and for the purpose of holding the animal for him, but yet that the defendant was guilty of a crime, for which he should be punished, in thereafter changing the brand. In our opinion, the judgment should be reversed, and the cause remanded for a new trial.        REVERSED.