Decided 3 November; rehearing denied 8 December, 1902.

## STATE v. MELDRUM.

[70 Pac. 526.]

LARCENY—POSSESSION WITH CONSENT OF OWNER—INTENT.

1. That one accused of larceny has secured possession of the property with the owner's consent is not conclusive of his innocence, but the question of his guilt will depend on the intent with which the possession was so secured, which is a matter of fact.

EVIDENCE OF FELONIOUS INTENT.

2. Evidence in a prosecution for larceny considered, and *held* to take the question whether, at the time of acquiring possession of the property with the owner's consent, defendant entertained a felonious purpose to convert it to his own use, to the jury.

SPECIAL INSTRUCTIONS SHOULD BE REQUESTED.

3. Where counsel desire an instruction covering a particular point, or given in an especial manner, it should be requested, otherwise error cannot be assigned for not giving it.

From Baker: RORERT EAKIN, Judge.

Alexander Meldrum appeals from a conviction of larceny.
AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Chas. F. Hyde,* and *Mr. Geo. J. Bentley.*

For the state there was a brief and an oral argument by *Mr. D. R. N. Blackburn,* Attorney-General, and *Mr. Samuel White,* District Attorney.

MR. JUSTICE BEAN delivered the opinion.

The defendant and one Manny Howard were jointly charged by an information filed by the district attorney of the Eighth Judicial District with the crime of larceny by stealing a mare, the property of R. R. Palmer and H. E. Denham. The defendants severed on their trial. Meldrum was convicted, and appeals. The evidence against him tended to show that in the spring of 1901 he and Howard, assisted by two or three others, were engaged in gathering horses from the range a few miles from Baker City for shipment. Palmer, one of the owners of the mare alleged to have been stolen, passed them on the road,

and told them he had a mare on the range branded I C, which he asked them to keep a lookout for. This they promised to do, Meldrum saying that, if he found any of Palmer's horses down by his place, he would take them up and hold them for him, to which Palmer answered, "All right." A few days later the mare in question was found, and driven by them, with some other animals, to what is known as the "Deal Corral," about sixteen miles from Baker City, where on the following morning they changed her brand from I C to H O, by what is known as the "picking process." She was then driven with other stock to Meldrum's place, some 15 or 16 miles farther away from the range and the home of her owners. The defendants gave no information to the owners of the mare, or either of them, about their having her in their possession; but, after she had been kept at the Meldrum place about a week, Palmer heard of it, and telephoned Howard, who said, "Yes," they had the mare, asked what they should do with her, and was told to leave her in Palmer's field when he came down to Baker City the following Thursday. On the next morning, however, he and his codefendant started with a band of stock to Ontario. When Palmer learned of this, he went out to the Meldrum farm, met Meldrum just before reaching there, and told him that he had come for his mare. Meldrum said he did not think she belonged to him, because she had an H O brand. Palmer, however, went out to the field and got the mare, identifying her notwithstanding the change in the brand.

1. Assuming these facts to be true, the important question on this appeal is whether the defendant Meldrum could be legally convicted of the crime of larceny, as charged in the information filed against him. It is argued that, because the owners authorized or requested him and his codefendant to take the mare up if they found her on the range, there could have been no felonious intent in the taking, and hence no crime, whatever may have been their subsequent conduct, or whatever disposition they may have intended to make of the animal. It is familiar law that where property is delivered by the owner to another, and is received *bona fide* and in good

faith, the subsequent wrongful conversion pending possession will not support an indictment for larceny in the original taking. If, however, the property was received or taken by the defendant with a felonious intent at the time, he is guilty of larceny, even though it was by the owner's permission. This is so because a felonious intent is a necessary ingredient of every larceny, and such an intent must exist at the time of the taking. The question of its existence is one of fact for the jury, which they may infer from the words or acts of the defendant, or from the nature of the transaction: 2 Archibald, Cr. Pl. & Pr. 366; 2 Bishop, Cr. Law (7 ed.), § 864; *Hill* v. *State,* 57 Wis. 377 (15 N. W. 445). Thus, in *Semple's Case,* 1 Leach, 420, the prosecutor was a coach maker, who let out carriages for hire. The prisoner hired a chaise of him, at the rate of five shillings a day during the time for which he should keep it, saying that he wanted it for three or four weeks. A few days afterward he took the chaise from the owner, but never returned it, nor could any tidings be obtained of him for twelve months thereafter, when he was accidentally discovered and apprehended. On this state of facts, it was argued by the prisoner's counsel that the offense did not amount to a felony, because the prisoner had obtained legal possession of the property upon a contract, and that at most he had only been guilty of a breach of contract. But the court held that the question of the prisoner's intent in taking or receiving the chaise was a matter for the jury, saying: "It is now settled that the question of intention is for the consideration of the jury; and in the present case, if they should be of opinion that the original hiring of the chaise was felonious, it will fall precisely within the principle of *Pear's Case,* 1 Leach, 212, and the other decisions which the judges have made upon the subject of constructive felony. If there was a *bona fide* hiring of the chaise, to pay so much for every day for the use of it, and a real intention of returning it, a subsequent conversion of it cannot be felony, whether the time for which it was hired be limited or indefinite. * * But, on the other hand, if the hiring was only a pretense made use of to get the chaise out of the posses-

sion of the owner, without any intention to restore it or to pay for it, in that case the law supposes the possession still to reside with the owner, though the property itself is gone out of his hands, and then the subsequent conversion will be felony.'' In *Commonwealth* v. *James,* 1 Pick. 375, it was in evidence that the prosecutor, having a quantity of barilla which he wished to have ground, sent it to a mill kept by the prisoner. After it was ground, a mixture consisting of three fourths barilla and one fourth plaster of paris was returned, and the miller was indicted for larceny in stealing the remainder of the barilla. His counsel contended that, supposing the facts to be as the evidence on the part of the government tended to prove them, the case made out was not larceny, but only a breach of trust, or at most a fraud, with which the prisoner was not charged in the indictment. The jury were instructed, however, that if they were satisfied from the evidence that the prisoner had taken from the parcel of barilla any quantity, with a view of converting it to his own use, substituting in its place an article of inferior value in order to conceal the fraud, he was guilty of larceny. The judgment of conviction was upheld, and the conclusion reached that, ''if the party obtain the delivery of the goods originally without an intent to steal, a subsequent conversion of them to his own use while the contract subsisted would not be felony; but if the original intent was to steal, and the means used to obtain the delivery was merely colorable, a taking under such circumstances would be felony.''

2. It will be observed that in the cases referred to there was a manual delivery of the property by the owner to the prisoner, and the voluntary parting with the possession thereof under a contract to be performed by him, and yet in each case the defendant was held guilty of larceny if he received the property with a felonious intent. This was farther than the prosecutor was required to go in this case. Here the property alleged to have been stolen was not delivered by the owners to the defendant, nor did they voluntarily surrender possession of it to him. All they did was to request or consent that he

might take possession of it for a certain purpose. If the possession had been taken in good faith, in pursuance of such request or permission, no crime would have been committed; but, if it was actually taken with a felonious intent, defendant was guilty of larceny in so doing, notwithstanding the previous consent and permission of the owners. In short, his guilt depends upon the intent which accompanied the taking of the property, and this was a question for the jury: *Stokely* v. *State,* 24 Tex. App. 509 (6 S. W. 538); *Boyd* v. *State,* 24 Tex. App. 570 (6 S. W. 853, 5 Am. St. Rep. 908), and the other Texas cases cited by the defendant, were decided under the statutory provisions of that state (Rev. Stat. 1879, Art. 727), which materially lessens their weight as authority in other jurisdictions. Moreover, it would seem from an examination of the cases that the court there had authority to, and did, pass upon the weight of the testimony,—a right not vested in this court: *State* v. *Pomeroy,* 30 Or. 16 (46 Pac. 797). Now, there was sufficient evidence in the case at bar indicating that defendant's taking of the animal was with a felonious intent to require that question to be submitted to the jury. The changing of the brand, and the manner in which it was done, immediately thereafter driving the animal 15 or 16 miles farther away from her accustomed range and the home of her owners, the failure to advise the owners that he had the animal in his possession, and defendant's statement in reference to the brand, were all suspicious circumstances, from which the jury were justified in finding a felonious intent, and we are therefore agreed that there was no error in denying the defendant's motion to direct a verdict.

Complaint is made on account of certain instructions given, and others refused. The court charged the jury, in substance, that it is not every taking and carrying away of the property of another that will constitute a larceny, but a felonious intent must be shown to have accompanied the taking, and in determining such intent they had a right to take into consideration all the testimony and circumstances bearing upon that matter. If they believed from the evidence that the owners of

the mare alleged to have been stolen authorized the defendant to take her up and hold her for them, and the defendant took her up in good faith for that purpose, and held her for the owners, he was not guilty: that if she was taken from the range by agreement or consent of the owners, in good faith, with an intent to return her to them, a subsequently conceived intention by defendant to wrongfully convert her to his own use would not constitute larceny, and he should be acquitted; but, if he took her with a felonious intent to appropriate her to his own use, he would be guilty, although the owners may have authorized or requested him to take her up for them. These instructions clearly and fairly covered the law of the case, and the verbal criticisms of the language employed are without merit.

It is also urged that the court erred in refusing certain instructions requested. But these were covered by the general charge. Instructions 1 and 3, as requested, are to the effect that if defendant took the animal alleged to have been stolen, under the authority of the owners, and held her for them, he could not be convicted, even though the brand was subsequently changed by him while the mare was in his possession, and in such case it would be the duty of the jury to disregard all evidence of the change in the brand, and acquit the defendant. The substance of both of these instructions, as far as material, was given by the trial court in the instructions already alluded to; and, moreover, there was no error in the court's refusal to give them as requested, as both omitted any reference to the intent with which the animal was taken.

3. There was no request in this, as in the Howard Case (*State* v. *Howard,* 41 Or. 49, 69 Pac. 50), to instruct that, if possession of the animal was taken with no intention at the time of stealing it, it would be immaterial whether or not the defendant subsequently changed the brand. In the absence of such a request, it was not error for the court to neglect to give an instruction to that effect. If the defendant desired that phase of the case presented to the jury, it was his duty to

41 OR.— 25

so request, and, not having done so, he is not entitled to base any assignment of error on that ground. The judgment of the court below is affirmed.    AFFIRMED.

Decided 26 May; rehearing denied 7 July, 1902.