## THE MUTUAL BENEFIT LIFE INSURANCE COMPANY *vs.* JARVIS.

The charter of the Mutual Benefit Life Insurance Company provided, that all persons who should, at any time, insure in or with said association, should, while so insured, be deemed and taken to be members of said corporation. It authorized the company, to take the notes or obligations of their members, for the amount, either in part or in whole, of the premium of insurance. If there should be just claims on the corporation, for losses sustained, to a greater amount than they had funds to meet, it

Insurance Company *v.* Jarvis.

required the directors, to assess such deficiency, in a ratable proportion, on the members of the association, or their lawful representatives, according to the amount of such members' insurance, "provided, that such assessment shall not exceed the amount of the note or obligation given by each member." A by-law of said company provided, that, in all cases when the premium was more than fifty dollars, it might be paid—one-fourth in cash, and three-fourths in a secured note, at twelve months, bearing six per cent. interest, and subject to assessments, if required. A, having become a member of said company, effected, therein, an insurance on his life for $5,000, for one year, and gave his note for three-fourths of the premium, to be paid for such insurance. At the end of the first year, he caused his policy to be renewed, and gave the company a new note, for the amount of the first note, together with the additional premium, which was payable by note, for the insurance of the second year, and applied for no further insurance. In an action upon said last note, brought by said company, against A, after his policy had expired, by lapse of time, it was held, that such note was to be taken, in connection with the limitations and conditions in the charter and by-laws of the plaintiffs; and, though absolute on its face, it was to be regarded only as a security for the payment of the losses of the company, upon assessments regularly made for that purpose; and, therefore, that, as it did not appear, that the members had been assessed, in conformity with their charter, the plaintiffs were not entitled to recover. Held, also, that, although the declarations of the plaintiffs' agent, made to the defendant, at the time said note was given, were not admissible in evidence, for the purpose of altering the contract between the parties, yet, such declarations were admissible, to show, that the note, though absolute in its terms, was received by the company, in connection with their charter and printed regulations.

THIS was an action, brought to recover the amount of a promissory note, which, with its indorsement and guaranty, was as follows, *viz.*:

"$367$\frac{50}{100}$.            Middletown, October 7th, 1848.

"I promise to pay the Mutual Benefit Life Insurance Company, or to the order of their Treasurer, three hundred and sixty-seven $\frac{50}{100}$ dollars, for value received, without defalcation, or discount, with interest, at six per cent., payable in twelve months after date—or sooner, if required to meet assessments by the company.            GEO. O. JARVIS."

"For value received, I guarantee the payment of the above note, and stand security therefor, till paid.

WILLIAM JARVIS.

"Middletown, October 7th, 1848."

"Received on the within note, as principal, twenty-seven $\frac{56}{100}$ dollars. November 29, 1843."

The defendant pleaded the general issue, with notice of special matter, to be given in evidence.

The cause was tried at Middletown, February term, 1852. On the trial, it appeared, that the plaintiffs were a Mutual Life Insurance Company, duly incorporated by the legislature of New Jersey, having an agent residing in this state, for the purpose of enabling and assisting persons to become members of said corporation, and to effect the insurance of their respective lives therein, according to the provisions of their charter, and the by-laws and regulations of said company;—which latter were shown to the defendant, at the time his policy of insurance was effected, and were in evidence on the trial. The second section of the charter provides, "That all persons who shall, at any time hereafter, insure in, or with, said association, shall, while they continue so insured, be deemed and taken as members of the said corporation." The sixth section was as follows: "That it shall and may be lawful, for the officers of said corporation, to take the notes or obligations of the members, for the amount, either in part or in whole, of the premium of insurance, in proportion to the amount insured." The ninth section provided, that, "if at any time it shall so happen, that there shall be just claims on the corporation for losses sustained, to a greater amount than they have funds on hand to discharge, in such cases, the directors for the time being shall, with all convenient expedition, proceed to assess such deficiency, in a ratable proportion, on the members of the association, or their lawful representatives, according to the amount of each member's insurance,—pro-

vided, that such assessment shall not exceed the amount of the *note or obligation* given by each member; which rates or assessment shall be approved of by a majority of the directors, and notice in writing shall be given to each member, or his lawful representative, of the assessment, and amount by him, her or them, required to be paid; and each and every member or his lawful representative, so notified, shall pay the same to the treasurer for the time being, within sixty days after such notification, and in default thereof, shall forfeit all *right and claim* to any policy that he may have obtained, and be no longer a member of the association; and shall also be liable for the amount of such assessment, with interest, to be recovered by action of debt, with costs of suit, before any court of competent jurisdiction."

It was provided in the by-laws of the company, that the premium, if over fifty dollars, might be paid, one-fourth in cash, and three fourths in a secured note, at twelve months, bearing six per cent. interest, and subject to assessment, if required, or that it might be paid weekly, monthly or quarterly. In the policy itself was a provision, that in every case where the policy should cease, all previous payments should be forfeited.

The defendant, on the 7th of October, 1847, became a member of said corporation, and made a declaration for the purpose of procuring the sum of $5,000, to be assured to him on his life, during the continuance thereof, and thereupon, for that purpose, paid to the agent of said company twenty-five per cent. of the annual premium, demanded for the assurance of said $5,000, and gave his note for the remainder of said premium, which note was given for the sum of $183.75; and was, in all respects, except in date and amount, of the same tenor as the note in suit.

The defendant having complied with the plaintiffs' terms, they thereupon issued, and, through their agent, delivered to him, a policy of insurance on his life for the said sum of $5,000.

At the expiration of a year from the time of the defendant's becoming a member of said company, and the effecting of said assurance therein, he paid to the agent of said company, for their benefit, twenty-five per cent. of said annual premium of $245, together with the interest on the aforesaid first year's premium note, and took up said note, and thereupon executed and delivered to said agent the note in suit, the same being given for the seventy-five per cent. of the two years' annual premium of $245.

Soon after the execution of the last mentioned note, the plaintiffs' agent informed the defendant, that, by a resolution of the company, fifteen per cent. of the annual premium notes of those members of the corporation who paid only twenty-five per cent. of their annual premiums in cash, was required by the company; and he thereupon demanded of the defendant said fifteen per cent. of the first year's premium note, and stated to him, that, by mistake, or for the reason that, at the time the note in suit was given, he was not informed of the said resolution of the company on that subject, he omitted to require the payment of said fifteen per cent. at that time. The defendant objected to the payment of said fifteen per cent. in cash, unless it was required for the purpose of meeting losses which the company had suffered on their policies; and whether it was required for that purpose was then unknown to said agent, and also to the defendant. The defendant, however, paid the sum demanded, being $27,50, and the same was, by said agent, indorsed on the note in suit.

It was not claimed, that there was any intentional fraud, on the part of the plaintiffs, or their agent, in inducing the defendant to become a member of, and to effect his insurance in, said company; but it was proved, by parol, and was so found by the court, if the evidence, admitted to prove the same, was admissible,—otherwise, it was not,—that the plaintiffs' agent, previous to the defendant's effecting his insurance,

informed the defendant, that the company gave policies of insurance, on as favorable terms to the insured, as any other life insurance company, and that no more than twenty-five per cent. of the annual premium would be required, in cash, of the assured, unless more was needed, to meet losses which might accrue on policies issued. It was also found, that these terms of insurance were more favorable to the insured than the terms required by other companies; but if, in addition to the twenty-five per cent. first required in cash, fifteen per cent. of the annual premium notes is also required to be paid in cash, when not required to meet losses, these terms are less favorable to the insured, than other companies require, and are less favorable on life policies, than the terms required of those members of this corporation who procure insurance, upon the payment, at first, of fifty per cent. of their premiums, in cash.

The plaintiffs objected to all the evidence of declarations of their said agent, as to their terms of insurance; but the court admitted the same, subject to the opinion of this court.

The defendant, at the end of the second year from his becoming a member of said company, withdrew therefrom, and gave up his policy, and thenceforth ceased to be a member thereof.

There was no evidence to show, and the plaintiffs did not claim, that they had sustained losses, to a greater amount than they had funds on hand sufficient to discharge, or that the company, or its directors, had made any assessments on the members of the association, under the ninth section of their charter; but the plaintiffs claimed, that upon the foregoing facts, they were entitled to recover the full amount of the note in suit.

The defendant claimed, that the plaintiffs were not entitled to recover anything.

The questions arising upon the foregoing facts, as to what judgment should be rendered in the cause, were reserved for the advice of this court.

*Whittlesey* and *Spencer,* for the plaintiffs, contended, 1. That the note in suit, is an absolute promise to pay, *in twelve months* from date, and also to pay sooner, if required, for the specific purpose of meeting assessments. It will bear no other construction.

2. That the ninth section of the charter contains nothing inconsistent with the plaintiffs' claim. The provisions of this section relate only to members, and it has no application to the defendant, he having ceased to be a member, when the suit was brought. It contains nothing, which precludes the plaintiffs from requiring *all cash,* or indulging their members, with such a credit as may be agreed upon. The object is, to require the directors to lay assessments, to meet losses. The defendant would wrest it into a provision to relieve a member from his express promise. It is only intended to apply to notes given in advance, and to assessments made upon them, before they become due.

There is nothing either in the charter, or the policy, which gives color to the idea, that any part of the annual premium is nominal. The regulation required the whole to be paid in *cash,* if $50 or less; and if over $50, it *may* be paid weekly, monthly or quarterly. Whatever might be the rights of the defendant, if he still remained a member, he became, at once, liable on his note, when he ceased to be a member.

The policy, which in one place, acknowledges the payment of the premium, in another place provides, that "*in every case, where this policy shall cease, all previous payments shall be forfeited to the company.*" Of course, the note which was taken in payment, became forfeited, as well as the cash which was paid, when the policy ceased, by the voluntary act of the defendant.

3. Independently of the charter, or other documents in this case, the plaintiffs' claim to give to the note a literal construction, is valid. The annual premium is a supposed equivalent for the annual risk. Notes are taken, only as a

species of investment, equally convenient for the company and its members. These notes are the resources of the company, and it would be absurd to say that a member, by voluntarily withdrawing, can annul his own note.

4. The defendant's claim also makes an absurd distinction between that class of members who pay more, and those who pay less than $50 annual premium. If it should be claimed, that a member, after withdrawing, still remains liable on his note, but only so far as it may be assessed, under section 9 of the charter, this is equally absurd; for, what security have the company, that the assessments will then be paid? They no longer have the security of the policy itself, because that has been already surrendered; nor can they require a new guaranty, however insolvent or worthless the old one may become.

5. The evidence offered, to show the representations made by the plaintiffs' agent, being designed to qualify, and vary the written contract of the defendant, is, of course, excluded by the general rule, as to parol evidence.

*Bulkeley* and *Tyler*, for the defendant, contended, 1. That the charter and regulations show, that this was a mutual company, and it is so found by the court. Mutuality among its members is, therefore, essential and fundamental.

But there would be no mutuality, if the company can enforce and collect the note of A, and wholly omit to collect that of B, and other members, at its pleasure.

In this case, there was no mutuality in the payment required. Payment here is not sought to pay losses; it comes from a change adopted, since this insurance was effected, which can not operate to the prejudice of prior contracts. This company stands upon the same ground, as regards these notes, as our mutual fire companies, to theirs.

2. That this company, under their charter and regulations, can not take the notes of the members, as investments, but

only as deposit notes, and as security for the payment of assessments for losses. They can take such notes only as the charter authorizes, and can enforce them only as there provided. It can not take them upon interest, nor in the present form.

3. Payment of these notes can be enforced only by reason of assessments, and upon all alike; and assessments can be made only for losses sustained to a greater amount than the fund on hand.

No such occasion has arisen, no such assessment has been made, nor notice given, as required by the charter, and the plaintiffs' allegations are not adapted to a recovery on such grounds. *Broughton* v. *Manchester Water Works Co.* 3 Barn. & Ald., 1, 9. *New York Fire Ins. Co.* v. *Ely & Co.*, 5 Conn. R., 560. 2 Cowen, 679. *Life & Fire Ins. Co.* v. *Mechanics' Fire Ins. Co.*, 7 Wendell, 31. *People* v. *Utica Ins. Co.* 15 Johns. R., 358. *Head & Amory* v. *Providence Ins. Co.*, 2 Cranch, 127. *Beaty* v. *Knowles' Lessee*, 4 Pet., 168.

4. Parol evidence was admissible, to show the purpose for which the note was given.

HINMAN, J. The plaintiffs' charter makes them, in fact, as well as in name, a Mutual Benefit Life Insurance Company. This is the fundamental principle of their organization. It is implied in their name, and is more fully expressed, in the body of the charter, which gives them power to insure the respective lives of their members, and denies them the power to insure any others, by providing that all persons, who shall, at any time, insure in or with said association, shall, while they continue so insured, be deemed and taken as members of the corporation; and provides for an equal assessment upon all the members, in proportion to each member's insurance, to pay for losses, which the company may not have funds on hand to discharge.

The sixth section of the charter authorizes the company

to take the notes or obligations of their members, for the amount, either in part or in whole, of the premiums of insurance, in proportion to the amount insured; and then, in the ninth section, it is provided that, if it shall so happen, that there shall be just claims on the corporation, for losses sustained, to a greater amount than they have funds on hand to discharge, the directors, in such case, shall proceed to assess such deficiency, in a ratable proportion, on the members of the association, or their lawful representatives, according to the amount of each member's insurance, "*provided that such assessment shall not exceed the amount of the note or obligation given by each member.*" The section further provides, that if, on due notice of his assessment, a member shall neglect to pay the same, within sixty days, he shall forfeit all claim to his policy, shall be no longer a member of the association, and shall also be liable, to the amount of such assessment, in an action of debt. The only provision in the charter, relative to the payment of losses, is contained in this ninth section; and, as the funds of the company are all derived from the payment of premiums, by the members, on their respective policies, and as the members are, in no event, liable to be assessed, to any greater amount than their respective notes or obligations, it is clear, that the notes or obligations, referred to in the ninth section of the charter, as liable to this assessment, must be the notes or obligations which the company are authorized to take of its members, for the amount, either in part or in whole, of their respective premiums of insurance; or, as they are called in the rules and regulations of the company, they are the *premium* notes of the members. The finding shows, that the note in suit was one of these premium notes; and, as the company has met with no losses, which makes it necessary for them to collect it, and has made no assessment to meet any loss, the question arises, whether the defendant is liable upon his note, except for the purpose of meeting a loss, and then, only to the extent of an assessment regularly made,

according to the provisions of the ninth section of the plaintiffs' charter. The note is absolute and unconditional in its terms, and as the time it had to run has expired, it appears to be due. If this was all there was in the case, undoubtedly the plaintiffs could recover. It might have been given for money, or it might have been given for the premium, or the portion of it, that was, by the agreement of the parties, to be paid in cash, irrespective of any call for losses; and if such was the case, it ought to be paid. The finding, how ever, shows, that such is not the case, and, on the contrary, that the understanding upon which this note was given, was, that it was not to be paid, unless required to meet losses. It was given, for a portion of the premium, which, by the regulations of the company, it was the intention, should be met by the profits of the business, unless required to meet losses. In the prospectus, containing the rules and regulations of the company, which was examined by the defendant, for the purpose of determining whether he would become a member of the company, and was delivered to him, for that purpose, by the company's agent, we find one of the first regulations to be, that the premium, if over fifty dollars, can be paid, one-fourth in cash, and three-fourths in a secured note, at twelve months, bearing six per cent. interest, and subject to assessment, if required; or it may be paid weekly, monthly, or quarterly. It was under this regulation, that the note in suit was given. It was, in part, a renewal of an original note, given for seventy-five per cent. of a previous year's premium, and in part, for the same percentage on the then accruing year's premium. Under the head of "mode of payments," we find this rule repeated, in these words: "If the annual premium is over fifty dollars, he can pay one-fourth in cash, and three-fourths in a secured note, at twelve months, bearing interest at six per cent.; which note is subject to assessment, if required by the directors, and of which sixty days' notice will be given. At the end of the year, if the party so desires, he may renew the balance of

the old note, not then called for, by paying the interest, and adding it to the next year's premium note, and paying his twenty-five per cent. in cash, as at first." Again, the company anticipated, that the members would receive back a large percentage of the amount paid, in annual dividends of profits, to be declared upon the amount of premium; and, in order to equalize the benefits to all their members, they provide, that *scrip*, bearing six per cent. interest, shall be issued to those who pay their premiums in full, which interest is to be paid annually; while those who give and renew their notes, are not to receive scrip, but their proportion of profits is carried to their credit, and draws interest, being retained by the company, as additional security for the notes. Again, the company say, that, by the system of payments adopted by them, it is easy for all who are not paupers, to protect their families from want; they are not required to pay, from year to year, in cash, a portion of the premium, which is to remain in the hands of the company, as profits, but the profits, after a few years, can be used by them, to aid in the payment of their annual premium. It is not necessary to allude further to the charter, and the rules and regulations of the plaintiffs' company. Undoubtedly, there are other parts of their documents, which have a bearing upon the question under consideration. Indeed, the whole tenor of them, in connection with the circumstances, under which the note in question was executed, goes to show, that the only object of the note was, to secure the company against losses which might be sustained, while the insured remained a member of the association. The charter authorizes the company to take premium notes. It provides how the losses of the company shall be assessed, upon these notes. These two provisions are followed up in the regulations of the company, which provide that the parties may renew, at the end of the year, the balance of the old notes, not called for, or required by the directors. If it be asked, what power the directors had to call for assessments, the

answer is in the charter, "to meet losses." Indeed, in the argument of the case, counsel seemed to admit, that in regard to all who continued members of the company, and chose to renew their notes from year to year, they had a right to do so. It was the expectation of the company, that the twenty-five per cent. of the premium, which was required to be paid in cash, would be sufficient to meet the ordinary expenses, and pay the ordinary losses; and the seventy-five per cent. would never be required to be paid, except, perhaps, a small balance, which might be due, at the death of the insured, after deducting the proportion of profits that might be earned by the company, and the balance was then only to be deducted from the amount of the policy. In this way, those who paid their premiums in full, by receiving dividends of profits annually, would, in the end, be made equal with those who only paid twenty-five per cent. of their premiums in cash, and the company prominently held this out, as an inducement to persons of limited means, to insure their lives in this association; and it is this principle, alone, which enables them to say, in their prospectus, that it is easy for all who are not paupers to protect their families from want, by insuring their lives with them; and this makes, between all the members, that mutuality, in regard to profits and losses, which was contemplated by the charter, and the organization of the company. But if the company can collect just such notes as it pleases, without first making an equal assessment upon all, it is clear, that there is an end to anything like mutuality. It is not pretended, that they do collect the great mass of their premium notes; but the broad ground is taken, that they can collect, or omit to collect, any or all, as the company pleases; thus destroying all mutuality, and leaving the members, who have taken their policies, upon the faith that they could renew their notes, from time to time, unless required to meet losses, to be assessed upon all alike, at the

mercy of the persons, who may be officers of the company for the time being. It is insisted, however, that the provisions of the ninth section of the plaintiffs' charter relate only to the members of the association, and have no application to the defendant, after he ceased to be a member. But the defendant was a member, when he gave the note; and it was the act of giving it, and paying that portion of the premium which is required to be paid in cash, that continued to him his right, as such member; and we look in vain to the charter or regulations, for any different rule or distinction between the notes of the members and those who have ceased to be members. The premium notes all stand upon the same footing, and the character which the charter and the regulations of the association impressed upon them at their inception, must remain, unless there is something in the same documents to alter it. The difficulty under which the plaintiffs' counsel labor, arises from their looking at the absolute terms in which the note itself is expressed. But if we take it in connection with the charter, and consider, that it was not an ordinary note, and was never delivered, as such, but was delivered. as a premium note, under the charter and the regulations of the company, we at once attach to it all the conditions, which are expressed in the charter and regulations. By these conditions, it appears, that it was never an absolute promise to pay, but was a mere security for losses, and merely subject to assessments for losses, and for nothing else; as a conditional security for losses, there was a consideration for it, and, to collect it for other purposes, would operate as a fraud upon the maker. Again, it is said, that the consideration of the note was the premium of insurance on the defendant's life, for the year it had to run, and that the defendant had the benefit of the insurance for that year, and, in justice ought to pay for the risk. If this was so in fact, we do not see that it would make him liable in any other way than is prescribed in the charter; but enough has been said, to show, that this is not so. By

giving the note, he came under an obligation, to pay such assessment for losses, not exceeding its amount, as might be regularly made by the directors; none such has been made, and so there is no obligation to pay; nor is this unjust, in regard to the other members of the association. By looking at the tables, in the prospectus, it will be seen, that the real risk which the company ran, for the year previous to the time the note fell due, was but a trifle over the twenty-five per cent. of the premium which was paid in cash. If he had insured for a single year, the premium would have been at the rate of about two per cent. on a hundred dollars, whereas, by insuring for life, they charged him nearly five per cent. annually. The additional charge undoubtedly arises from averaging the risk among all the years that such a life is estimated to last. Still, it is no less true, that he paid the company in cash, very nearly the full value of the risk the company ran, before his policy became void by his withdrawal; and it is this fact, which enables the company safely to issue life policies upon the payment of so small a proportion of the premium in cash. If the members withdraw from the association, they have paid in cash the full, or about the full value of the risk which the company had run before the withdrawal; and if they do not withdraw, when the policy is paid, the company deduct the balance of the premium notes, not previously paid by a credit of profits, from the sum insured in the policy. Upon this system, the company, if it has correctly calculated the proportion of the premium which it will require to be paid in cash, is always safe. Indeed, it is for its advantage, after the life policies have run a few years, that the members should avoid their policies by withdrawal, and obviously becomes more and more so, by the lapse of time. Indeed, so obvious is this, that the regulations say, that the assured can, after a term of years, surrender the policy, and receive its equivalent in value; and, this seems to us a sufficient answer to the suggestion, that it was a fraud upon the company, to take the ben-

efit of the policy, for the year before the withdrawal, and not pay the premium charged.

On the trial of the cause, a question arose, whether certain declarations, made by the agent of the plaintiffs, previous to, and at the time when the policy of insurance was issued, and the original note was given, were admissible in evidence. It does not appear, from the finding, for what precise purpose those declarations were offered. It is clear, however, that if they were offered, for the purpose of explaining, or in any way altering the terms of the contract, as evidenced by the note, and by the policy and the charter and the regulations of the company, they were not admissible, for any such purpose; but, so far as they went to show, that the note, though not so expressed upon its face, was a mere premium note, such as the company is authorized to take, under the sixth section of the charter, and that it was delivered as such, and therefore liable to all the incidents, and subject to all the conditions which the charter annexes to notes of that description, we think the evidence was admissible for this purpose. In this aspect, it went merely to give effect to the note, as an authentic instrument, under the plaintiffs' charter. It is true, that the operations qualify the absolute terms of the note, and annex conditions and limitations to it; but, this operation is not the effect of the parol evidence, but of the plaintiffs' charter; the evidence merely applies the instrument to its proper subject matter. The charter gives the plaintiffs no power to take premium notes or obligations for any other purpose, than as a security for losses; and when it is shown, that this was a premium note, these incidents are at once annexed to it; and unless effect is given to it, in this way, it becomes a note, given without consideration.

We therefore advise the superior court, to render judgment for the defendants.

In this opinion CHURCH, C. J., concurred. WAITE and STORRS, Js., were absent.

ELLSWORTH, J. My reflections upon this case have brought me to a different conclusion, from that expressed by my brethren.

Mr. Jarvis, the defendant, applied to the plaintiffs, for an insurance upon his life for $5000, from the 7th of October, 1847. From Carlisle's tables, (which were used by the company, to ascertain the proper annual premium, to be paid by the defendant,) it appears, and it was agreed, it should be the sum of $245; one-quarter of this, the defendant paid at the time, and gave his note for the remaining three-quarters, payable at the end of the year "without default or discount," with interest. If, at the end of the year, he chose to continue a member of the company, by further insuring, he could, at his *request*, renew the insurance for another year, by paying twenty-five per cent of the premium for another year, and giving a new note, for the amount of the former note, and interest, and the three-quarters of another $245, the premium for the second year; so that the note, now in suit, consists of premium, and interest for *two years'* insurance. This premium note fell due, on the 7th of October, 1849, that being the date up to which he had been insured, and after which he did not ask for further insurance. It will thus be seen, that the company had insured the defendant's life for two years, at the stipulated premium, and how the defendant is to get rid of the payment of this *earned* money, by his own act simply, I have not been able to discover. The money being earned, can be recovered on the common counts, as well as on the special count.

By the terms of the charter, in the sixth section, the company declare, "that it shall and may be lawful, for the officers of said corporation, to take the notes or obligations of the members, for the amount, either in part or in whole, of the premium of insurance, in proportion to the amount

insured." In pursuance of this provision, the directors passed a by-law, that, in all cases where the premium was over fifty dollars, the insured might pay twenty-five per cent. down, and give his note for the balance, to be paid at the end of the year, with interest; this being the termination of the risk, and if possible, to make this obligation more clear and strong, it was to be paid without defalcation or discount, and might in the mean time be called for, should the company need it to pay losses. It would seem, therefore, that the note in question was understandingly given, as an equivalent for the risk, taken by the plaintiffs for the defendant's life, for the space of two years. So from the note itself, it seems, the promise is *absolute* and *positive*. The money is to be paid in twelve months after date, and *sooner*, if required to meet assessments.

It is said, however, that the note is not absolute, and is not to be paid, as is written, without defalcation; but is to be paid only upon future assessments. Here, I think, is the great mistake of the defendant's counsel. The defendant, by separating himself from the company, has deprived himself of the privilege contemplated by this provision of the by-law, so that the by-law is not at all applicable to the case of the defendant. The provision is intended for his benefit, while he remains a member; but he has forfeited that privilege, by his separation. When he ceased to be a member, he ceased to be a subject of assessment, both by the charter and the by-laws; for *none but members can be assessed.* Were it indeed practicable, to assess those who had been members, for what losses could this be done? those that accrued during membership, or those which may accrue at any future period, upon policies issued during the time of membership?

It must be conceded, that if the defendant is not liable, in the present suit, he is not liable at all, and yet he has been insured for the agreed premium of $490, by paying only $122.50. In the same by-law, to which the defendant refers,

for his deliverance from this note, we find, what, I am confident, is the only provision applicable to this case. It is this: "at the end of the year, if the party so desire, he may renew the balance of the old note, not then called for, by paying the interest, adding the next year's premium, and paying twenty-five per cent in cash, as at first." This the defendant has not desired to do ; but, on the other hand, has absolutely refused and neglected to do anything ; and yet insists he ought not to pay. He claims that he can not be assessed, because he is not a member, and that he can not be compelled to pay, without assessments. Thus, he would avoid the payment of a note, as fairly earned and due as any that was ever presented in a court of justice. I am for holding the defendant to his agreement. If he will not renew his note, nor pay the stipulated twenty-five per cent., nor find satisfactory security, he ought to pay the note, *as it is written:* upon his own showing, the assessment provision has nothing to do with the question. And further, the note, under no circumstances, is to be assessed. By the ninth section of the charter, in a ratable proportion the *members* of the association (not the notes of the members) may be assessed. The notes are held to be due and payable, as written, and, as I contend, are absolutely payable, when and because the members have enjoyed their insurance, and can not alter their obligations, by withdrawing from the company.

It must be further remembered, that these notes, given for earned premiums, constitute the fund of the company, to which the public look for the payment of losses, but they now discover, that these notes mean nothing, and secure nothing. The consequence too, is, that a person may remain a member of the company, and be insured for any time, twenty or fifty years, until his premium note shall amount to thousands of dollars, and then retire from the company, repudiate his note, and if dishonest enough, pursue the same course with another company.

---

I would inquire, what is the difference between the person, who pays in cash, when the annual premium is less than fifty dollars, and one who pays partly in cash, and partly in a promissory note, where the premium is more? Upon the hypothesis of the defendant, the latter may pay one-quarter of his premium and be as fully insured, as if he had paid the whole. This is a gross absurdity, and I can not feel, that it is at all in accordance with the understanding of the parties, or the public, or with any principles of justice or law, with which I am acquainted. From the first breaking of this case, I have been at a loss to learn, what could be urged by the defendant, in favor of this defence.

Something has been said, about the want of mutuality, and of consideration; but no question of this kind can arise; for the defendant's life was insured, for two years, at the price agreed, and that surely is mutuality and consideration enough; and I insist, that the defence is nothing but a bare-faced attempt to avoid the payment of a clear note of hand. The defendant was fairly and fully insured; and had he died within the two years, his representatives would have been entitled to the five thousand dollars; and yet he asserts, that though he was so insured, he will not fulfill the contract, as he made it. He will neither renew nor pay his note, nor remain in a condition to be assessed; and, in this defence he has succeeded, as I think, by the prostration of the plainest principles of equity and justice.

Judgment for defendant.