Decided 19 December, 1904.

**STATE v. TELLER.**

[78 Pac. 980.]

ELEMENTS OF LARCENY.

1. Larceny consists of taking the personal property of another, without the owner's consent, accompanied by an intent to wholly deprive the owner thereof.

INSTRUCTIONS MUST PRESENT RESPECTIVE THEORIES OF PARTIES.

2. A party who has offered evidence in support of the issues on his part is entitled to instructions that will present his theory of the case to the jury for consideration.

EVIDENCE—LARCENY—EMBEZZLEMENT.

3. The evidence here does not show any facts on which the court could properly instruct the jury as to the law where the missing property came lawfully into the lands of the defendant.

From Harney: MORTON D. CLIFFORD, Judge.

Francis M. Teller appealed from a conviction of larceny.                                          AFFIRMED.

For appellant there was a brief over the names of *Lionel R. Webster, Geo. W. Hayes,* and *Hayward H. Riddell,* with an oral argument by *Mr. Webster.*

For the State there was a brief over the names of *Andrew M. Crawford,* Attorney General, and *J. W. McCulloch,* with an oral argument by *Mr. Crawford.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

The defendant, Francis M. Teller, was convicted of the crime of larceny, alleged to have been committed in Harney County May 16, 1903, by unlawfully taking, stealing, and carrying away $145 in gold coin and $55 in currency of the United States, the property of one Mrs. L. S. Whitmer, and from the judgment which followed he appeals.

1. An exception having been taken, it is contended by defendant's counsel that the court erred in refusing to charge the jury as they requested, to wit: "If the money alleged to have been stolen was given to Mrs. Smith and

the defendant by Mrs. Whitmer to keep for her until called for, then I instruct you to find the defendant not guilty." It is argued that testimony was introduced at the trial tending to show that the money alleged to have been stolen came lawfully into the defendant's possession, and that, if it be assumed, even, that he converted any part of it, though he might, under a proper indictment, have been found guilty of embezzlement, he could not have been convicted of larceny as charged, and hence he was entitled to have his theory of the case clearly stated to the jury. Larceny consists of an intent to trespass on the personal property of another, coupled with an intent wholly to deprive the owner thereof, and the crime is not committed unless such intents concurrently and contemporaneously exist: 1 Bishop, Crim. Law (7 ed.), §§ 207, 342; Rapalje, Larceny, § 20. In *State* v. *Hull*, 33 Or. 56 (54 Pac. 159, 72 Am. St. Rep. 694), Mr. Justice BEAN, in discussing this subject, says: "To constitute the crime of larceny, as charged in the indictment, there must be a trespass, that is, a taking of the property without the consent of the owner." In *State* v. *Meldrum*, 41 Or. 380 (70 Pac. 526), it was also said: "It is familiar law that, where property is delivered by the owner to another, and is received *bona fide* and in good faith, a subsequent wrongful conversion pending possession will not support an indictment for larceny in the original taking." In *Johnson* v. *People*, 113 Ill. 99, in a very learned opinion, Mr. Justice MULKEY says: "As trespass is an injury to the possession only, it logically and legally follows that no one in the lawful possession of goods can commit larceny of them, for it would be idle and absurd to talk of one committing an injury to his own possession."

2. It has repeatedly been held that, when a party to an action has given evidence tending to sustain the issues on his part, he is entitled to have the jury instructed on his

theory of the case : *Fiore* v. *Ladd*, 25 Or. 423 (36 Pac. 572); *Barnhart* v. *Ehrhart*, 33 Or. 274 (54 Pac. 195); *Farmers' Bank* v. *Woodell*, 38 Or. 294 (61 Pac. 837, 65 Pac. 520); *Lewis* v. *Craft*, 39 Or. 305 (64 Pac. 809); *Bingham* v. *Lipman*, 40 Or. 363 (67 Pac. 98); *State* v. *Smith*, 43 Or. 109 (71 Pac. 973).

3. Based on these elementary rules, it remains to be seen whether or not any testimony was given tending to show that the money alleged to have been stolen came lawfully into the defendant's possession.  The transcript shows that in May, 1903, Mrs. L. S. Whitmer and her husband started from Huntington, Oregon, for California, with a team of horses and a wagon, and, having some money of her own, she wrapped it in cloth, securely sewing the edges, and placed the bundle in a box of household goods which they carried.  These people quarreled on the road, in consequence of which Mrs. Whitmer concluded to leave her husband, and, after reaching Burns, Oregon, she opened the box without his knowledge, secured the package, and took it, unopened, to the Cottage Hotel, which was kept by Mrs. Smith, the defendant's mother-in-law, to whom she presented a letter of introduction, detailed the difficulty she had had with her husband, and stated that she feared he would try to get possession of the money.  After consulting with the defendant, who suggested that it should be left with a merchant or at a bank, Mrs. Smith finally consented to hide it, whereupon the package and some currency that Mrs. Whitmer had upon her person were delivered to her, and, without the defendant's knowledge, she placed them in a bureau in the room of the hotel occupied by him and his wife. Whitmer discovered that the money had been taken, and went to the hotel, claiming that it belonged to him, charging his wife with the larceny thereof, and creating such a disturbance that he was ejected.  After he left the hotel,

his wife drew a check on a bank in Idaho, making it payable to the defendant, who deposited it with a bank in Burns for collection, and when the money was received thereon he delivered it to her.

The defendant, as a witness in his own behalf, testified that when he received the check Mrs. Whitmer said to him: "I want you to take care of my money. I am going to have an awful time here." He further said that in the evening of the day the package was left at the hotel, he and his wife having retired for the night, his sister-in-law entered their room, saying that Mrs. Whitmer had been arrested for the larceny of the money, and that the house would be searched in trying to find it; that, having promised Mrs. Whitmer to look after her money, though he had never seen it, he learned from his wife that it was in the bureau, to which he went, securing the package, and, knowing that Whitmer could accurately describe it, he removed the cloth, and wrapped the money in a towel, hiding it in a woodshed; that immediately on returning his wife informed him there was also in the bureau $100 in currency belonging to Mrs. Whitmer, which he had overlooked, whereupon he placed $40 thereof in his vest pocket, his wife putting the remainder with some gold she had; and that a peace officer came to the hotel, and searched Mrs. Whitmer's trunk, but failed to find any money. This witness also said that the next morning after the arrest he went to the jail to see Mrs. Whitmer, who inquired of him, "Is everything safe?" and receiving an affirmative answer, she thanked him; that a few hours thereafter the charge preferred against her was examined by a magistrate, and she was discharged; that Whitmer being unable to pay the bills he had incurred at Burns, his wife gave him $30 for that purpose, the witness paying her that sum from the currency which he had in his vest pocket; that Whitmer, upon receiving the money, resumed

his journey, leaving his wife at the hotel; that upon his departure the witness inquired of her, "Shall I bring your money to you, Mrs. Whitmer?" saying, "I don't want to be responsible for it," and she, in answer thereto, referring to her husband, replied, "No, wait until he is well off the field; way off." After the money had remained in the shed three days, the defendant, at Mrs. Whitmer's request, delivered it to her, wrapped in the towel, upon the receipt of which she claimed that a small sack of gold, which the package originally contained and some currency, amounting in all to $200, had been taken.

The defendant having testified that he lived at the Cottage Hotel, his counsel, in referring thereto, inquired, "You helped conduct the institution and worked around the place?" to which he replied, "Yes, sir." Mrs. Smith, as defendant's witness, in referring to the delivery of the check to her son-in-law, and also to the request made at that time by Mrs. Whitmer to him, testified as follows: "She looked up at him, not me, and says, 'Now, you will see that my money is safe, won't you?' and he said, 'I promised to stand by you, and I will do it.'" This witness, alluding to the defendant's inquiry of Mrs. Whitmer after she was discharged from arrest, and to the latter's answer thereto, and to her reference to her husband, and to the money she desired to give him, also testified: "He says, 'Shall I get your money now?' and she says: 'No; wait until he is off the field. Wait until he gets away outside of town. Don't bring it out as long as he is here.' She says: 'I want to give him $30 to get off. He hasn't a bit of money.'" The defendant's wife, as his witness, testified that in the afternoon of the day the package was left with her mother Mrs. Whitmer told her husband she wanted him to stay by her, and protect her money, and he promised to do so. This witness having visited Mrs. Whitmer when she was in the custody of an

officer, referring thereto, and to her husband as a physician, further testified: "The next morning I went up to Mrs. Dodson's, and as I went back I went to see her; and 'the doctor,' I says 'has kept your money for you, and put it where no one will find it'; and she says, 'I am very thankful, and I want you to thank the doctor for doing that.'"

The foregoing is the substance of the testimony applicable to the error relied upon as tending to show that the defendant was interested with Mrs. Smith in the management of the hotel, so that the giving of the money to her was, in law, a delivery thereof to him. Our statute, so far as deemed involved in the inquiry under consideration, is as follows: "If any * * agent, clerk, employé, or servant of any private person, * * shall embezzle or fraudulently convert to his own use, or shall take or secrete, with intent to embezzle or fraudulently convert to his own use, any money * * which shall have come into his possession, or be under his care, by virtue of such employment, such * * agent, clerk, employé, or servant shall be deemed guilty of larceny, and upon conviction thereof shall be punished accordingly": B. & C. Comp. § 1805. In *Snapp* v. *Commonwealth*, 82 Ky. 173, the plaintiff in error, who, as a chief clerk and cashier of a tax collector, had almost the entire control of the office and of the moneys received in pursuance thereof, was convicted of the larceny of public funds belonging to the City of Louisville, and, having appealed, the judgment was reversed, the court holding that whatever moneys were received by the principal or by his clerk in the discharge of their duties came lawfully into the hands of both, and, each having a right thereto, the appellant could not be convicted of the crime charged. In the case at bar, though the defendant testified that he helped conduct the hotel and worked around the place, it fails to show in what capacity he was employed, or that it

was his duty or custom ever to take charge of any of the money received from or deposited by guests. There is an entire lack of proof tending to show that he was the agent or representative of his mother-in-law in such a manner as to entitle him to the possession of the package or of the money given to her, nor does it appear that they came into his possession, or under his care, by virtue of his employment.

It is maintained that the testimony tends to show that the defendant secured possession of the money with Mrs. Whitmer's knowledge and consent. It conclusively appears, from an inspection of the transcript, that the package and currency were delivered to Mrs. Smith, and not to the defendant. He had never seen any of the money, and did not know where it was placed, until his wife informed him, when the officer came to arrest Mrs. Whitmer, whereupon he removed it from the bureau. Prior thereto the money was never in his possession. It may be inferred, however, from his wife's testimony, that Mrs. Whitmer knew he had placed the money where it could not be found, for which she was thankful; but, if it be assumed that a conversion of the money, the possession of which was secured under the circumstances detailed, constitutes embezzlement, and not larceny, so that a conviction could not be sustained under an indictment charging a commission of the latter crime, the legal principle insisted upon does not come within the instruction requested, which is based on the theory that testimony was introduced tending to show that the money was delivered to the defendant by Mrs. Whitmer.

Believing no error was committed as alleged, the judgment is affirmed.     AFFIRMED.