Argued May 2, decided May 31, 1910.

## STATE *v*. HINTON.

[109 Pac. 24.]

LARCENY—INDICTMENT—DESCRIPTION OF PROPERTY—VALUE.

1. The manner of alleging the larceny of a chattel at common law is applicable to the description of a chattel made the subject of larceny by statute, such as a check, and it is sufficient to describe the instrument by giving its usual name, amount, and value, and an indictment

alleging that accused wrongfully stole a bill of exchange, commonly called a bank check, drawn on a certain bank, payable on demand to another's order, said bill of exchange being then and there the personal property of such other, of a certain value, sufficiently described the property stolen.

LARCENY—INDICTMENT—ALLEGATIONS.

2. In a prosecution for larceny of a check, whether the drawer had funds in the bank to the amount of the check is not a matter of substantive allegation but of evidence.

INDICTMENT AND INFORMATION—PLEADING—CONCLUSIONS.

3. An allegation of the indictment in a prosecution for the larceny of a check that the check was of the value named is not objectionable as a conclusion of law.

LARCENY—INDICTMENT—ALLEGATIONS—VALUE—SUFFICIENCY.

4. In a prosecution for larceny of a check, an allegation that the check was drawn payable to a certain person and was his property implied that it had been delivered to him by the maker before the theft so as to become a valid instrument between the parties; it not being necessary to allege the fact of liability under the instrument, in order to show its value, the liability appearing from the nature of the instrument.

LARCENY—INDICTMENT—ALLEGATIONS—NATURE OF PROPERTY STOLEN—
    NEGOTIABILITY OF CHECK.

5. In a prosecution for the larceny of a check, it is not necessary to allege that the check was indorsed by the payee so as to make it negotiable; Section 1798, B. & C. Comp., making the stealing of a bill of exchange, or other thing in action, larceny, without any limitation as to its negotiability.

BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—VALUE—CHECKS PAY-
    ABLE TO BEARER.

6. A check indorsed by the payee with the words "pay to the order of," with his signature written immediately below but with a sufficient blank space intervening to permit the writing therein of the name of the holder, made the check payable to bearer, and negotiable by delivery under Section 4436, B. & C. Comp., providing that an indorsement in blank specifies no indorsee, and may be negotiated by delivery, so that it could not be said that the check had no commercial value so as not to be the subject of larceny.

LARCENY—ELEMENTS—VALUE OF PROPERTY STOLEN.

7. Even if the indorsement of a check by a payee was an order to pay it to himself, the wrongful taking of such check deprived him of its value, so as to make the taking a larceny; it not being necessary that the property stolen be of value to a third person, if it is valuable to the owner.

LARCENY—INDICTMENT—ALLEGATIONS—VALUE OF PROPERTY.

8. At common law, the property stolen must be shown to have been of some value at least to the owner, in order to convict for larceny, and the same must be shown in a prosecution for stealing a chattel made the subject of larceny by statute, where the statute does not make it the subject of larceny without reference to its value.

LARCENY—PROSECUTIONS—PROOF—VALUE OF PROPERTY.

9. Under Section 1798, B. & C. Comp., making it larceny to steal a bill of exchange or other thing in action, and providing punishment by imprisonment in the penitentiary for not less than one nor more than ten years if the property stolen exceeds $35 in value, and imprisonment in the county jail if of less value, the State must show that the property stolen exceeds such value in order to sustain a conviction for the higher penalty, though the evidence need not be such as would be necessary in an action on the instrument.

CRIMINAL LAW — PRESUMPTIONS — REGULARITY OF BUSINESS TRANS-ACTIONS.

10. Under Section 788, subds. 19, 20, B. & C. Comp., raising a presumption that private transactions are fair and regular, and that the ordinary course of business has been followed, unless the contrary is shown, it will be presumed in absence of a contrary showing, that the drawer of a check in another's favor had deposits sufficient to pay the check, or had made arrangements to pay it.

LARCENY—PROSECUTIONS—SUFFICIENCY OF EVIDENCE.

11. In a prosecution for larceny of a check, whether the check stolen exceeds the value of $35 so as to justify imprisonment in the state prison, *held* for the jury.

LARCENY—DEFINITION.

12. "Larceny" is the taking of another's personal property without the owner's consent, accompanied by an intent to wholly deprive him of its value.

LARCENY—ELEMENTS—INTENT.

13. A felonious intent at the time of the taking is essential to larceny.

LARCENY—INTENT—TIME.

14. To make the finder of a check guilty of larceny, he must have had an intent or fraudulent purpose to convert it to his own use at the time he took possession thereof, and that he knew or had reasonable means of knowing the owner is evidence of such intent, if he afterwards converts it to his own use.

LARCENY—PROSECUTIONS—INSTRUCTIONS.

15. In a prosecution for the larceny of a check, the court instructed as to what was larceny generally, and that intent to convert the property to accused's own use at the time of its taking without the owner's consent was essential to constitute larceny, and instructed as to the degree of proof necessary to convict, and the statutory presumption of innocence until guilt was proven beyond a reasonable doubt, and finally instructed that the State's theory was that the bill of exchange was taken from the postoffice after it had been deposited there by the holder, and accused's theory was that it was found in the street by him, but that it made no difference whether he took the check from the postoffice or picked it up on the street, provided that the evidence should show beyond a reasonable doubt that if he picked it up in the street he knew at the time that it belonged to the payee, and if he did not, but converted it to his own use, it was a sufficient conversion under the law or larceny. *Held*, that the final instruction was not erroneous when considered in view of the whole charge.

CRIMINAL LAW—TRIAL—PROVINCE OF JURY—CONSTRUCTION OF INSTRU-
MENTS.

16. The legal effect of an indorsement of a check is a question of law for the court, and not a question for expert testimony, so that, in a prosecution for stealing a check, a question to a bank cashier whether the check would have been cashed in the condition it was, was properly excluded.

From Grant:   GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE SLATER.

The defendant, Ben Hinton, was indicted at the November, 1908, term of the circuit court for Grant County, being charged with the larceny of a bill of exchange, in the form of an ordinary check upon a bank. The charging part of the indictment reads as follows:

"That the said Ben Hinton on the 29th day of May, A. D. 1908, in the county of Grant, and State of Oregon, then and there being, did then and there wrongfully, unlawfully, and feloniously take, steal, and carry away a bill of exchange, commonly called a bank check, drawn on the First National Bank of Heppner, Oregon, and payable on demand to the order of F. M. Rounds, said bill of exchange then and there being the personal property of the said F. M. Rounds and of the value of sixty dollars and fifty cents."

Defendant's demurrer to the indictment was overruled, and a plea of "not guilty" having been entered he was tried, and a verdict of guilty returned, in which the value of the check was found to be $60.50. Thereafter defendant was sentenced to confinement in the State penitentiary for a period of one year, and a judgment entered accordingly, from which he has appealed.   AFFIRMED.

For appellant there was a brief over the names of *Messrs. Leedy & Patterson*, with an oral argument by *Mr. A. D. Leedy.*

For the State there was a brief over the name of *Mr. John W. McCulloch*, District Attorney.

MR. JUSTICE SLATER delivered the opinion of the court.

1. The objections urged against the indictment are that

it does not show (1) by whom the check was drawn; (2) that the drawer of the check had any funds in the First National Bank of Heppner; (3) that the check was a valid and subsisting bill of exchange, or had been issued and delivered to F. M. Rounds, or indorsed by Rounds so as to make it negotiable. A chose in action, as a bill of exchange or check, was not at common law the subject-matter of larceny, but has been made so in this State by the statute. Section 1798, B. & C. Comp. The methods permissible at common law for describing a chattel in an indictment charging larceny are held to be applicable to the description of the thing made the subject of larceny by statute (2 Bishop's New Criminal Procedure, § 732), and the description of the instrument by its usual name and the amount and face thereof and its value is sufficient (1 McClain, Criminal Law, § 595). In *Whalen* v. *Commonwealth*, 90 Va. 544 (19 S. E. 182), an indictment for larceny of "one paper purporting to be a check for the payment of one hundred and twenty-five dollars of the value of one hundred and twenty-five dollars," etc., was held to be a sufficient description. This case cites the case of *Commonwealth* v. *Brettum*, 100 Mass. 206 (97 Am. Dec. 95), which holds that, where promissory notes are made by statute the subject of larceny, they may be described in the indictment in the same manner as other things having an intrinsic value; that is, by any description applicable to them as a chattel. The indictment in that case described the property alleged to have been stolen as "one promissory note of the value of," etc. It was held to be sufficient. See, also, *State* v. *Smart,* 4 Rich. Law (S. C.) 356 (55 Am. Dec. 683) ; *State* v. *Pierson* 59 Iowa, 271 (13 N. W. 291.) The description contained in this indictment does not give the amount or face value of the check, but it does give other marks of special identification, such as the name of the bank on which it was drawn and the name of the payee. We think, therefore, that the description is sufficient.

2. Whether the drawer had funds in the bank to the amount of the check is not a matter of substantive allegation, but only a matter of evidence pertaining to the question of value raised by the averment in the indictment that the check was of the value of $60.50.

3. It is further claimed that this allegation is but a conclusion of law, but under all the authorities it is sufficient.

4. As to the third objection, it is alleged in the indictment that the check was drawn payable to F. M. Rounds, and was the property of said Rounds. This imports that previous to the alleged theft the instrument had been delivered by the maker to Rounds, thereby becoming the property of the latter, and a valid instrument between the parties. For the purpose of showing the instrument to be an instrument of value it is not necessary to specifically set out the fact of liability thereunder, as the liability will appear from the nature of the instrument. 1 McClain, Criminal Law, § 595; 25 Cyc. 77.

5. To constitute a sound charge of larceny it was not necessary to allege that the check had been indorsed by Rounds so as to make it negotiable. The statute has prescribed, as the essence of a crime, the stealing of a bill of exchange as a thing in action, without any limitation as to the particular character of the paper taken respecting its negotiability. We conclude, therefore, that the indictment was not subject to demurrer.

6. The check was received in evidence over defendant's objections that upon its face it was of no commercial value; that in its condition it could not be used as property of value by any one but F. M. Rounds. Upon the face of the check it is payable to Rounds, and there is indorsed thereon, in the hand-writing of Rounds, these words: "Pay to the order of"—with his signature written immediately below. But a sufficient blank space intervenes between the words of the order and the signature

to permit writing therein the name of a holder in due course. This amounts to an indorsement in blank, rendering the instrument payable to bearer and negotiable by delivery. Section 4436, B. & C. Comp.

7. If, however, the indorsement be construed, as contended for by defendant's counsel, to be an order to pay to himself, neither the terms of the instrument, nor its legal effect, have been changed; it was collectible by payee, and, having been taken without his consent, he was deprived of its value. It is not necessary that the property stolen should be of value to a third person, if valuable to the owner. 2 Roscoe's Criminal Evidence (8 ed.) 859; *People* v. *McGrath*, 5 Utah 525 (17 Pac. 116). There was, therefore, no error in admitting the check in evidence.

8. When the State had rested its case defendant moved for a directed verdict, for the alleged reason that the State had failed to prove that any crime had been committed by defendant. The deficiency of the proof, it is argued, is that no evidence was offered, tending to show that the drawer of the check, W. H. Sterritt, had funds in the bank, upon which he was authorized to draw, to the amount of the check, or that it had been certified to or accepted by the bank, and that unless such proof was offered it was not shown that the check was of any value, and therefore not the subject of larceny. At common law no conviction on the charge of larceny could be had unless the property taken was affirmatively proven to be of some value, at least to the owner; and where the statute does not declare the property to be the subject of larceny, without reference to value, the prosecution must show that the property is of some value. 8 Enc. of Evidence, 140.

9. The statute, Section 1798, B. & C. Comp., in substance, declares that if any person shall steal a bill of exchange or other thing in action he shall be deemed guilty of larceny, and upon conviction thereof, if the

property stolen shall exceed in value $35, such person shall be punished by imprisonment in the penitentiary not less than 1 year nor more than 10 years; but if the property stolen shall not exceed the value of $35, such person, upon conviction, shall be punished by imprisonment in the county jail, etc. It is apparent that to sustain a conviction of the higher penalty there must be some competent evidence from which the jury may properly find the value of the thing stolen to be in excess of $35, but the evidence need not be such as would be necessary in an action on the instrument. *State* v. *Smart,* 4 Rich, Law (S. C.) 356 (55 Am. Dec. 683). We are satisfied, however, that the evidence as to value was sufficient to go to the jury.

10. F. M. Rounds testified that he received the check from W. H. Sterritt, the drawer, in consideration of board, to the amount of $60, furnished by him to Sterritt's sheep shearers, and 50 cents' worth of tobacco, the amount of the check being $60.50. There was no direct evidence that Sterritt had any money to his credit, subject to check in the First National Bank of Heppner, but it appears that he had received value to the amount of the face of the check, and until something to the contrary is shown it must be presumed that private transactions are fair and regular, and that the ordinary course of business has been followed. Section 788, subds. 19, 20, B. & C. Comp. It is not usual or customary for people to give checks upon banks for the payment of money, unless they have the amount thereof on deposit to their credit, or have made some special arrangements for credit, against which they may draw. It could not be presumed that the maker of the check intended to cheat or defraud his creditor by uttering a worthless check, or that he obtained goods or money on the face of the check without having sufficient money on deposit to meet it, for in such event, under the statute of this State, he may have committed a criminal

offense. Although no money may have been in the bank to the credit of the drawer, still the check represents to the payee, from whom it was taken, a chose in action to the amount of its face, for upon its dishonor the holder has his recourse upon the maker to recover the amount of the consideration of the check. ·

11. It also appears from the defendant's testimony that after he had obtained possession of the check he transferred it to a third party, receiving therefor $50.50 in money and a credit of $10 on his account, thereby evidencing that it possessed that much value in the defendant's hands. The testimony taken as a whole was sufficient to go to the jury upon the question of value, and to make a *prima facie* case against the defendant.

12. An exception was taken to this instruction:

"The theory of the State in this case is that this bill of exchange was taken from the post office after it had been deposited there by the holder, F. M. Rounds; and the theory of the defendant is that it was picked up in the street—found by the defendant. I instruct you, gentlemen, that it makes no difference in this case whether or not defendant took the check in question from the post office or picked it up on the street, provided, however, that the evidence should show beyond a reasonable doubt that if he picked it up from the street he knew at the time he got it that it belonged to F. M. Rounds, and, if he did not, but converted it to his own use, it is a sufficient conversion under law of stealing."

The principal objection made to the instruction is that it does not contain the essential element that to constitute larceny of lost property there must exist, at the time of finding such property, a felonious intent in the mind of the finder to deprive the owner of his property. Larceny consists in taking the personal property of another without the owner's consent, accompanied by an intent to wholly deprive the owner thereof: *State* v. *Teller,* 45 Or. 571 (78 Pac. 980).

13. A felonious intent is a necessary ingredient of every larceny, and such intent must exist at the time of taking: *State* v. *Meldrum,* 41 Or. 380 (70 Pac. 526).

14. As to the larceny of goods obtained by finding, there is some contrariety of authority as to when a thing that constitutes a felony has been committed. The rule stated in Coke's 2 Inst. 108. "That if one lose his goods and another find them, though he convert them, *animo furandi,* to his own use, it is not larceny," was declared by Parke, B., in *Merry* v. *Green,* 7 Mees & W. 623 (which was an action for false imprisonment), to have undergone limitations by more recent decisions, so that if from any mark upon it, or the circumstances under which it is found, the owner could reasonably be ascertained by the finder, then the original taking, *animo furandi*—that is, with the intent not to take a partial or temporary possession, but to usurp the entire dominion over it—constituted larceny. During the argument in the case above cited one of the counsel asked, "if the original possession is lawful, when is the felony committed?" Parke, B., interrupting, said: "Why, suppose a person found a check in the street, and in the first instance takes it up merely to see what it is; if afterwards he cashes it, and appropriates the money to his own use, that is felony, though he is a mere finder till he looks at it." And in the case of *Reg* v. *Thurburn,* 1 Den. C. C. R. 387 (18 L. J. M. C. 140), the prisoner found a bank note which had been accidentally dropped on the highway; there was no name or mark on it, indicating the owner, nor were there any circumstances attending the finding, which would enable him to discover to whom the note belonged when picked up, nor had he any reason to believe that the owner knew where to find it again. The prisoner meant to appropriate it to his own use. He was convicted, but the court held that the conviction was wrong. These two cases fairly mark the limitations of

the rule establishing larceny of lost property by a finder. In this country the general consensus of authority is to the effect that to make the finder guilty of larceny he must have possessed, at the time he took possession, an intent or fraudulent purpose to convert the property to his own use. And the fact that the finder knew or had reasonable means of knowing the owner is indicative of such intent when he afterwards converts the property to his own use. 1 McClain, Criminal Law, § 571; 2 Roscoe's Criminal Evidence, 848; 2 Bishop's New Criminal Law, § 878; 3 Greenleaf, Evidence, § 159; *Allen* v. *State,* 91 Ala. 19 (8 South. 665: 24 Am. St. Rep. 856; *Ransom* v. *State,* 22 Conn. 152, 156.

15. The court had instructed the jury as to what constituted larceny generally in exact accordance with the law, as stated in *State* v. *Teller,* 45 Or. 571 (78 Pac. 980), and *State* v. *Meldrum,* 41 Or. 380 (70 Pac. 526), and particularly that the intent is one of the principal ingredients of the crime, and that the intent to convert the property to defendant's own use at the time of the taking, without the owner's consent, is necessary to constitute larceny. Then followed an instruction covering the question of the degree of proof necessary to convict, and the statutory presumption of innocence attending the defendant until proven guilty beyond reasonable doubt. Immediately following this the instruction complained of was given. In giving the instruction the court first stated the theory of the State as to the facts, and then the theory of defendant. No objection was taken to this part of the instruction. What follows therein is clearly an application of the law previously given by the court to the effect that, in the application of the law as to a felonious intent, it makes no difference whether the defendant took the check in question from the post office or picked it up from the street, provided, however, that the evidence shows beyond a reasonable doubt that if he

picked it up from the street, knowing at the time who the owner was, and he thereafter converted it to his own use, it constituted larceny. From a consideration of the whole charge, which is necessary to a fair interpretation of any part thereof (*State* v. *Anderson,* 10 Or. 448, 463), it is therefore apparent that there was no error in the particular part of the instruction to which the exception was taken.

16. The defendant called one E. L. Freeland as an expert witness upon the value of the check, who testified that he was assistant cashier of the First National Bank of Heppner, upon which bank the check was drawn; that he had occupied that position for seven or eight years, and was in charge of the bank during the months of May and June, 1908. He was then asked to state, "under the conditions that the check is in at this time, whether or not that check was of any value at the bank, or would have been cashed in the condition it is by the bank, for F. M. Rounds or anybody else." A general objection was sustained to the question, and error is predicated thereon. The contention of defendant is that the indorsement read, "pay to the order of F. M. Rounds," and that the effect thereof was to destroy the value of the check. An examination of the check, which is in the record, as we have before stated shows the indorsement is not in that form, as interpreted by the counsel for the defendant, but is equivalent to an indorsement in blank, payable to bearer. But it was for the court to say, as a question of law, what the legal effect of the indorsement was, and not a question of fact to be explained or shown by expert testimony. There was no attempt to show by this witness, as might have been done, that the maker of the check did not have funds to the amount of the check in the bank at the time, and this omission on the part of the defendant to elicit the existence or nonexistence of that fact, the means for doing which being at his hand, we think the jury were

entitled to consider, in estimating the value of the check. There was, therefore, no error in the ruling of the court.

Other errors have been assigned, some of which have been commented upon in the brief of counsel. It is sufficient, however, to say that we have carefully examined them, and find no merit therein. What we have said upon other points in a great measure applies to all.

The judgment is affirmed.    AFFIRMED.