Decided October 19, 1896.

## STATE *v.* SKINNER.
[46 Pac. 368.]

LARCENY BY BAILEE — EVIDENCE OF TRUST RELATION.— In a prosecution for larceny by bailee, there was evidence that defendant, the agent of a building and loan association, represented to plaintiff, in negotiations for a loan, that the association required each applicant for a loan to advance one per cent. of the amount of the loan, ten dollars of which was to be used in examining the title of the land offered by the applicant as security, the balance to be credited on the loan if made. Defendant converted to his own use the money advanced by prosecutor, and the loan was refused by the association. *Held,* that the evidence was sufficient to show that prosecutor parted with the title to the money advanced only in case a loan was made, and therefore warranted a conviction.

From Douglas: J. C. FULLERTON, Judge.

The defendant, F. H. Skinner, was indicted, tried, and convicted of the crime of larceny by bailee, and, having been sentenced to the penitentiary for the term of two years, he appeals, assigning as error the refusal of the court to instruct the jury to return a verdict of not guilty.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. William W. Cardwell.*

For the state there was a brief signed by *Messrs. Cicero M. Idleman,* attorney-general, *W. E. Yates,* district attorney, and *George G. Bingham,* with an oral argument by *Mr. Bingham.*

Opinion by MR. CHIEF JUSTICE MOORE.

The defendant's counsel contends that the evidence produced at the trial was insufficient to

establish the existence of any trust relation between
the defendant and the person alleged to have been
defrauded by him, and having moved the court,
after the state had introduced its evidence and
rested, to direct the acquittal of the defendant, he
could not be convicted of the crime of larceny by
bailee. "Within the meaning of the criminal law,
a bailment," says Mr. Bishop, in his work on Crim-
inal Law, (Vol. II, § 857,) "is where one has personal
property intrusted to him, to be returned or de-
livered to another in specie when the object of the
trust is accomplished," and the offense consists in
the unlawful and felonious conversion of the prop-
erty or money by the bailee to his own use: Hill's
Code, § 1771; *State* v. *Lucas*, 24 Or. 168 (33 Pac.
538). In *Welsh* v. *People*, 17 Ill. 339, CATON, J., in
distinguishing between simple larceny and larceny
by bailee, says: "Where * * * the alleged lar-
ceny is perpetrated by obtaining the possession of
the goods by the voluntary act of the owner, under
the influence of false pretenses and fraud, * * *
there is no real difficulty in deducing the correct
rule by which to determine whether the act was a
larceny and felonious, or a mere cheat and swindle.
The rule is plainly this: If the owner of the goods
alleged to have been stolen parts with both the
possession and the title to the goods to the alleged
thief, then neither the taking or the conversion
is felonious. It can but amount to a fraud. It is
obtaining goods under false pretenses. If, however,
the owner parts with the possession voluntarily, but
does not part with the title, expecting and intend-

ing that the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way, as directed or agreed upon, for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back and make the taking and conversion a larceny. The pointed inquiry in such a case must always arise, did the owner part with the title to the thing, and was the legal title vested in the prisoner? If so, he was not guilty of larceny."

Examining the evidence in the light of the definition and rule above given it tends to show that the defendant was the agent of the Washington National Building, Loan, and Investment Association, of Seattle, Washington, a corporation of that state, organized to loan to its stockholders money arising from the sale of its capital stock, taking as security therefor mortgages on real property in cities or villages only; that as such agent he was authorized to sell the stock of the association, for which he was to receive a commission, but he had no authority to accept or receive any money on account of loans made by the association; that on August nineteenth, eighteen hundred and ninety-five, the defendant represented to one R. B. Dixon that the association of which he was agent was prepared to loan money on farm property at six per cent. interest, but, as a condition and guarantee of good faith, each applicant for a loan was required to advance one per cent. of the amount applied for, ten dollars of which was to be paid for procuring an abstract of the title to

29 OR.—41.

real property offered as security, the remainder to be credited on the evidence of the indebtedness if the loan was made, but, if the application for the loan was rejected, the money so advanced was to be returned to the applicant.   Dixon, being in need of money, thereupon made a written application to the said association for a loan of ten thousand dollars " on building loan association plan," offering as security therefor a first mortgage on his farm of one thousand six hundred and fifty acres in Douglas County, and, complying with the condition imposed by the defendant, gave him a check on the Douglas County Bank, at Roseburg, for one hundred dollars, taking the following receipt therefor:—

"ROSEBURG, Douglas Co., Or., August 19, 1895.
"Received from R. B. Dixon one hundred dollars on account B. & L. Loan, $100.

"F. H. SKINNER,
"Special Traveling Agent."

The defendant got the check cashed at the bank, and converted the money to his own use.   On August twenty-ninth of that year Joseph H. Hawley, the general agent of said association at Portland, Oregon, received from the defendant by mail Dixon's application for the loan, together with what purported to be the latter's application for the purchase of one hundred shares of the capital stock of the said association, of the value of ten thousand dollars.   There is nothing in the application for the loan to indicate that Dixon desired to subscribe

for any stock of the association, except a recital as follows: " My certificate of stock in the association is numbered ——, calling for one hundred shares, and is dated ——, 18—." Dixon, in speaking of the disposition to be made by the defendant of the money so advanced, says: " I understood at the time, if the loan went through, ten dollars was to go for the abstract, also examining the abstract in Portland, and in case the loan did not go through, I was to get ninety dollars of the money back." And on cross-examination he further says: " I advanced one hundred dollars, as I understood, to go to the company. It was to be forwarded on down there, and if the loan was made, why all right, I was to get it back; and if it was not made, I was to get it back." The witness, referring to the representations made by the defendant in relation to the disposition of the money, also says: " He claimed that it had to be forwarded on down to the company to secure the loan." From this testimony the jury might have found that Dixon never intended to part with the title to the money so advanced, unless his application was approved and the loan made, and that the defendant obtained it under an agreement that he would forward it to the general manager of the association at Portland, and, if the loan was not made, it would be returned to Dixon. This would be equivalent to a finding that a trust was thereby established, and that the defendant was the bailee of the money, which, upon a demand therefor, he neglected to return, thereby converting it to his own use. It is true, the board of directors

of the association never rejected the application for a loan, but the testimony of Hawley, its general manager, tends to show that under its bylaws no loans could be made on farm property, and this being so the refusal to entertain the application was equivalent to a rejection.

The defendant's counsel, in his brief and argument, seeks to show that the money was paid by Dixon to the defendant under an agreement to purchase stock in the association. If this be true, Dixon parted with the title to the money, and no trust attached to it in the hands of the defendant, but Dixon testifies that he never signed the application to purchase stock, and that the signature thereto is a forgery. This testimony materially affected the question of the guilt or innocence of the accused, and render it necessary for the jury to pass upon it, and, having found the defendant guilty, they must have found that Dixon never signed the agreement to purchase stock. There was, in our judgment, sufficient evidence produced at the trial from which the jury might have found that a trust existed between Dixon and the defendant, which the latter betrayed, and hence there was no error in the court's refusal to give the instruction requested. The judgment must therefore be affirmed, and it is so ordered.        AFFIRMED.