## STATE *v.* HOGG.*

(129 Pac. 115.)

**Criminal Law—Instructions—Conformity to Evidence.**

1. An instruction that, if the jury believed there were other people in the immediate vicinity and that prosecutrix made no outcry, there would be a presumption that no rape was committed, "unless she has satisfactorily explained why she did not make an outcry," is incorrect as to the quoted part, where there was no evidence of any explanation.

**Criminal Law—Instructions—Definitions—Necessity.**

2. An instruction that, if the jury believed there were other people in the immediate vicinity and that prosecutrix made no outcry, there would be a presumption that no rape was committed "unless she has satisfactorliy explained why she did not make an outcry," is incorrect, where the jury was not informed as to what would be a satisfactory explanation.

**Criminal Law—Flight—Evidence.**

3. Although it is competent to prove flight after a crime, yet the fact must be determined by the movements of the defendant, and the admission of evidence as to the travels of a posse who were searching for him is error.

**Criminal Law—Flight—Instructions.**

4. An instruction that flight is a fact which the jury might consider in determining guilt was faulty, in that it did not advise the jury to consider other facts, where there was evidence of other reasons than fear of arrest for causing the defendant to flee.

**Criminal Law—Flight—Admissibility of Evidence.**

5. To explain his departure after an offense, a defendant may show that he was in danger of being mobbed in the vicinity and that a certain person had made threats of violence against him.

From Union: JOHN W. KNOWLES, Judge.

The defendant, William Hogg, was indicted, tried and convicted of the crime of rape, and from the judgment and sentence imposed, he appeals.          REVERSED.

*As to presumption of guilt from flight, see note in 39 L. R. A. (N. S.) 58.                                        REPORTER.

For appellant there was a brief and an oral argument by *Mr. Turner Oliver.*

For the State there was a brief and an oral argument by *Mr. Francis S. Ivanhoe,* District Attorney.

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Among others, the court gave to the jury the following charge:

"I instruct you, gentlemen of the jury, that if you believe from the evidence at the time of the alleged rape other people were at the same time in the immediate vicinity, who might easily have heard her had she made any outcry, and that she in fact made no outcry at the time the defendant was attempting to have connection with her, these facts will tend to raise a presumption that no rape was committed upon her at the time, unless she has satisfactorily explained why she did not make an outcry or call for help at the time."

The instruction was given as requested by the defendant, except the added clause "unless she has satisfactorily explained why she did not make an outcry or call for help at the time." The defendant excepted to this amendment, and it is objectionable on two grounds. The first is that there was no evidence or pretense that the prosecutrix had attempted to explain why she did or did not make an outcry or call for help. After she had been examined and re-examined by both the prosecution and the defense, she finally testified that she holloed several times. Her testimony in part was that the defendant came to her father's residence, which is a short distance from the home of the defendant's sister, who is married, and told the prosecutrix that his sister wanted to see her. She then accompanied the defendant across the fields towards his sister's house instead of going by the road leading from one place to the other. The prosecutrix says that just before arriving at their destination the defendant seized her, pulled her into what she calls a

chicken house, a building 165 feet from the sister's dwelling house, laid her upon the ground, and consumed a half of an hour in performing the sexual act. She says, too, that after he let her up she went to the house and asked the defendant's sister what she wanted and was told by that lady that nothing was wanted of her. She then returned to her father's house in company with the defendant, who mounted his horse which he had left there and rode away, and she soon afterwards, at the questioning of her parent, told him what had occurred. The sister, although at home during this time, denied that the prosecutrix had been at her house or that she had seen or spoken to her at all on the occasion mentioned. The defendant utterly denied the charge. As stated, there was no evidence of any explanation by the prosecutrix about making or not making an outcry. In this respect therefore the instruction was an abstract direction not justified by the testimony, and hence, under many authorities in this State, it was erroneous. *Breon* v. *Henkle,* 14 Or. 494 (13 Pac. 289) ; *Woodward* v. *O. R. N. Co.,* 18 Or. 289 (22 Pac. 1076) ; *State* v. *Bowker,* 26 Or. 309 (38 Pac. 124) ; *Anderson* v. *O. R. N. Co.,* 45 Or. 211 (77 Pac. 119).

2. Again, the jury was left uninformed as to what would be a satisfactory explanation. If her failure to call for help was induced by fear or force or threats overcoming her will on that subject, it would be satisfactory in point of law. If her explanation were based upon pleasing promises or presents or some other such inducements, it would not be satisfactory. The jury should not have been left to determine this question under the instruction given.

3. The only remaining error which we will consider is that growing out of the procedure of the court relating to an alleged flight of the defendant. It is related in the testimony that the crime was committed between

12 and 1 o'clock p. m. of Sunday, July 16, 1911, in Union County. The defendant was taken into custody in Baker County three or four days afterwards. W. A. Maxwell, the justice of the peace who issued a warrant for the arrest of the defendant on the charge mentioned, testified that on Tuesday and Wednesday following the occurrence described in the indictment he summoned a posse, and they went out searching for the defendant for the purpose of arresting him. Over the objection of the defendant on the ground that it was incompetent, irrelevant, and immaterial, the witness was allowed to testify that they "traveled about 35 miles the first day and the second perhaps not over 30, that is with the team, and they walked 8 or 10 miles that day." Although it is competent to prove the flight of a defendant after committing an offense, yet the fact of such an escape is to be determined by the movements of the defendant, and not by those of the ones going to search for him. It was an error to admit the testimony about the travels of Maxwell and his companions, especially as it is shown by the testimony that his posse was not successful in capturing the defendant.

With the aid of the defendant's brother, two men, named Bennett and Draper, went to a point in Baker County where the brother brought the defendant into their presence, and they conveyed him under arrest direct to La Grande without taking him before the magistrate who issued the warrant. On the cross-examination of Bennett on this point the defendant's counsel, referring to the neighborhood in which the prosecutrix lived, asked this question:

"On account of the ferocious excitement of the people over there it would not have been good for him to have stopped there?"

This was objected to by the counsel for the State as incompetent, irrelevant, and immaterial, and the court

sustained the objection. It was contended by the defend-
ant in explanation of his going to Baker County that he
went to avoid an altercation with one Burnham. There
was testimony tending to show that Burnham and the
defendant had quarreled over the affections of a young
woman other than the prosecutrix. The father of this
damsel, the subject of their altercation, testified that his
daughter had discarded Burnham for the defendant and
related that the former had made threats against the
latter. He was then asked to state whether he told the
defendant how Burnham felt toward him. Sustaining
the objection of the prosecution, the court refused to
allow this question to be answered.

4. On the question of flight the court gave this
instruction:

"There has been some testimony introduced in the
trial of this case for the purpose of showing that soon
after the alleged commission of the crime the defendant
fled from the vicinity of where the crime is alleged to
have been committed. I instruct you that the flight is
a fact and circumstance which you have a right to take
into consideration in determining the question of the
guilt or innocence of the defendant."

The defendant excepted to this instruction as well as
the rulings of the court on the admissibility of the testi-
mony already noted.

5. It was competent for the defendant to show not only
that he was in danger of being mobbed in the vicinity,
but also that Burnham made threats of violence against
him all for the purpose of explaining his departure from
Union County to Baker County. In *Batten* v. *State,* 80
Ind. 394, the court held that for the purpose of aiding
the jury in properly determining the weight to be
attached to the circumstance of the defendant's flight it
was competent for him to show what was the manner of
the persons present at the occurrence complained of and
whether they followed him up threatening violence. In

*Bradburn* v. *United States,* 3 Ind. T. 604 (64 S. W. 550), the principle is laid down, as stated in the words of the syllabus, that:

"Where on a trial for murder the State proved that the defendant left the State immediately after the homicide which he claimed was in self-defense, it was error to exclude disinterested evidence that he was advised to leave to escape injury from friends of the deceased." *State* v. *Desmond,* 109 Iowa 72 (80 N. W. 214) ; *Evans* v. *State* (Tex. Cr. App.), 76 S. W. 467.

All the circumstances of the supposed flight of the defendant should be allowed to go to the jury, and the instruction should cover not only the theory of the prosecution but also that of the defendant. The direction of the court on the question of flight is faulty in that it does not advise the jury to take this fact into consideration with other facts and circumstances of the case, neither does it authorize the jury to consider the conditions under which the escape was made if made at all. In *State* v. *Fairlamb,* 121 Mo. 137, 148 (25 S. W. 895, 898), the court says:

"It is not every going away from the place of the homicide that raises a presumption of the guilt of the accused, and, when the facts tend to show that the purpose of going away was not to avoid arrest, the instruction should be so framed as to include all the circumstances that the defendant may have the benefit of such explanatory facts."

There are precedents, it is true, that sustain the instruction given as a mere platitude; but authorities founded on better reason teach us that the jury should be instructed further to the effect that they must take into consideration the circumstances and all the facts accompanying the departure in connection with other facts proven in the case and determine whether or not the flight was from a consciousness of guilt or from mere cowardice or was a genuine journey in good faith, with-

out reference to the accusation. It may be that an innocent man is dismayed at circumstances which are apparently against him and has not the courage to stand his ground and so takes to flight. It may be, also, that his departure is attributable to an entirely different cause, or to the influence of friends. He is entitled to develop all these circumstances before the jury in explanation of his course, and the instruction of the court should be broad enough to give him the benefit of such testimony if true. The following precedents on this subject may be helpful: *Hickory* v. *U. S.,* 160 U. S. 408 (16 Sup. Ct. 327: 40 L. Ed. 474); *Alberty* v. *U. S.,* 162 U. S. 501 (16 Sup. Ct. 864: 40 L. Ed. 1051); *State* v. *Poe,* 123 Iowa, 118 (98 N. W. 587: 101 Am. St. Rep. 307); *White* v. *State,* 111 Ala. 92 (21 South. 330).

There are numerous other errors predicated on persistence of the prosecutor in asking questions which were leading, the examination of minor collateral issues immaterial in their nature, and the refusal of the court to grant a new trial; but all these will probably be obviated at another hearing. Hence they are not considered here.

The judgment of the court below is reversed.

REVERSED.

MR. JUSTICE BEAN concurs in the result.