Argued September 12, affirmed October 10, 1916.

# STATE *v.* STILES.*

(160 Pac. 126.) ·

### Embezzlement—Larceny by Bailee—Evidence—Sufficiency.

1. In a prosecution for larceny by bailee, alleged to have been committed by a real estate broker in retaining as a commission a sum of money received from a prospective purchaser as a first payment of purchase price, evidence *held* sufficient to sustain a finding that the purchaser parted with title to the money conditionally and only in case her proposal to give a chattel mortgage in part payment should be accepted by the owner of the property.

> [As to what constitutes, and who may commit, embezzlement, see note in 87 Am. St. Rep. 19.]

### Criminal Law—Appeal and Error—Review—Invited Error.

2. Where defendant's counsel on direct examination asked the owner of the property if he confirmed the sale as reported to him, error in permitting the witness on cross-examination to answer substantially the identical question, which called for a conclusion of the witness, was invited.

### Embezzlement—Evidence—Admissibility—Statute.

3. Under Section 1956, L. O. L., making it larceny for any bailee of money, etc., to wrongfully convert or neglect or refuse to deliver or account for money bailed, etc., according to the trust, intent not being an element of the crime, the exclusion of testimony of the owner of the property tending to show the intent with which the money was retained by the broker was not error.

### Criminal Law—Trial—Instructions—Assuming Facts.

4. A requested instruction that if the jury found that the owner of the property approved the terms of the contract of sale at or about the time it was signed then the sale was confirmed according to the terms of the contract, and there would be no larceny by defendant in retaining the money, and they should acquit defendant, was properly refused as assuming that certain terms offered by owner were accepted by prospective purchaser, and not submitting the question whether such a contract was consummated.

### Embezzlement—Trial—Instructions.

5. A requested instruction that under the terms of the contract in evidence when the money was delivered to defendant, title passed with possession, and its retention would not constitute larceny, was properly refused, there being evidence that the money was delivered conditionally.

*For authorities passing on the question, effect of fact that one entitled to commissions out of fund, upon his prosecution for embezzlement, in case he retains the whole sum, see note in 13 L. R. A. (N. S.) 511.                                                    REPORTER.

Criminal Law—Trial—Instructions.

6. An instruction defining the word "bailee," although not predicated on any evidence, was not error, since the defendant having been charged with the crime of larceny by bailee, the definition of the word, or a general description of the relation which it implies, was proper.

Criminal Law—Trial—Instructions.    •

7. An instruction that if the state proved beyond a reasonable doubt that the sale was not confirmed, that the money was delivered to defendant and that defendant failed to return it on demand, and contrary to the provision of his trust, the jury should find defendant guilty, the remainder of the instruction to which no exception was taken being that if the state failed to prove these various propositions beyond a reasonable doubt, the jury should find defendant not guilty, was properly given, as supported by evidence that the money was delivered to defendant conditionally.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

The defendant, H. A. Stiles, was indicted, tried and convicted of the crime of larceny by bailee, and he appeals. A statement of the facts will be found in the opinion of the court.    AFFIRMED.

For appellant there was a brief over the names of *Mr. Wilson T. Hume* and *Mr. H. Daniel,* with an oral argument by *Mr. Hume.*

For the State there was a brief over the names of *Mr. C. C. Hindman,* Deputy District Attorney, and *Mr. Walter H. Evans,* District Attorney, with an oral argument by *Mr. Hindman.*

Department 2. Opinion by MR. CHIEF JUSTICE MOORE.

It is contended that an error was committed in denying motions, interposed when the state had introduced its evidence and rested, and also when all the evidence had been received, to direct the jury to return a verdict for the defendant, on the ground that the evidence disclosed the money alleged to have been misappropriated was paid over to him pursuant to a

written contract whereby the title to the property passed with a delivery of the possession. The evidence shows that the defendant is a real estate broker and engaged in that business at Portland, Oregon, that F. F. Waffle, Emma Waffle and Maude M. Kent, on March 27, 1914, were the lessees of the John A. Nelson farm, situate near Warren, Oregon, and the owners of livestock, farming implements and hay then on the demised premises, at which date they executed to the defendant a writing whereby he was authorized, within 15 days, to secure an assignee of the lease and a purchaser of the stock, etc., "for the sum of $3,250 net to us, all cash for the equipment, and assume the said lease." The writing contains the following clauses relating to the defendant, viz.:

"And you are hereby authorized to accept a deposit on the purchase price, and to execute a binding contract on our behalf. If the above-described property is sold within the life of this contract to any purchaser to whom you have submitted and offered the property during the term of this agreement, we hereby agree to pay you all over $3,250 that you sell for as commission, and you are hereby authorized to retain said commission out of any money which may be paid to you on account of said purchase price or as a deposit."

The limitation thus prescribed, within which a sale of the property might be made, was orally extended by the owners from time to time. Pursuant to such authority the defendant advertised the property for sale for $4,000, whereupon Mrs. Elizabeth C. Ross, having seen the published notice, called at his office and inquired about the lease, the livestock and the hay. She then owned in Portland a house and lot, estimated to be worth $3,500, which real estate was subject to a mortgage of $800, and she desired to execute a deed of her home in part payment of the con-

sideration stated in the advertisement. Soon there-
after the defendant with an automobile took her and
two young men who subsequently became her sons-
in-law to the Nelson farm, where they inspected the
property offered for sale. Mrs. Ross testified that
having talked with Mr. Waffle she said to the defend-
ant on the return journey:

"Mr. Stiles, I don't see what you fetched us down
here for. This is a cash proposition."

He replied:

"Never mind that. Just leave that to me. We
don't have to have $2,000 cash."

She also stated upon oath that in a day or two the
defendant notified her he had prepared a contract for
the purchase of the property and desired her to call
and sign the agreement. She complied with the re-
quest, saying:

"When Mr. Stiles handed me the contract to sign
there were certain things we had to meet before I
could raise the $2,000, and Mr. Stiles understood this
completely. I told Mr. Stiles 'I don't think I ought
to sign that contract until I hear from Mr. Jackson.'
He was the man that held the $800 mortgage on my
place at this time, and the one that I wanted to get
it increased with. 'If he didn't come through with
what I want, I can't raise that $2,000.' Mr. Stiles
says, 'Never mind, Mrs. Ross, I am making about $500
a month. I will help you out of that if you can't get
it from Mr. Jackson.'"

She signed the contract May 16, 1914, then orally
offering to pay $2,000 in cash and to give a chattel
mortgage on the property as security for the re-
mainder of the purchase price. She hoped by execut-
ing a new mortgage on her home for $2,300 to have
$1,500 remaining after discharging the prior lien and

in order to obtain the latter sum the defendant agreed to apply to Mr. Jackson therefor. Mrs. Ross also expected to secure from a Mrs. Fisher a loan of $600 and from George G. Allison $300, thus making $2,400 with which to pay the $2,000 on account of the purchase of the stock, implements and for an assignment of the lease, and to defray the expense of moving to the farm. At the time the contract was signed the defendant desired her to make a deposit with him of some money on account of the agreement, and three days thereafter she took to him a check for $200 for that purpose, whereupon a receipt therefor was indorsed on the agreement above the signature of the parties. The contract was a printed form on which the written part left meaningless the impressed word "dollars," now marked by parentheses. The amended writing reads:

"This agreement entered into this 16th day of May, 1914, by and between H. A. Stiles, of Portland, Or., and Mrs. E. C. Ross, purchaser, address 5204 43d St. S. E., Portland, Oregon, witnesseth: That H. A. Stiles, agent, agrees to sell, and the aforesaid purchaser agrees to buy the stack of feed and implements on the John A. Nelson farm, 1¾ miles west of Warren, Or., according to a list already submitted, and take over the lease now held by F. F. Waffle and associates, subject to confirmation by owners, for the purchase price of $4,000, including the rent to April, 1915 (dollars) upon the following terms: $2,000 cash when papers are ready, balance to be arranged, and a part of the old hay and hogs that may be sold is to be applied on the balance when sold and subject to as many conditions and restrictions as may run with the land. It is further agreed that Mrs. Ross is to have credit for the hogs and calves, etc., that has been sold off the farm by F. F. Waffle. H. A. Stiles hereby acknowledges receipt of $200, May 19th (dollars) as earnest-money and part of the purchase price, which

deposit shall be returned in case owner does not confirm sale.

"H. A. STILES, Agent,
"By R. A. STILES.
"Mrs. E. C. Ross, Purchaser."

Mrs. Ross further testified that upon paying $2,000 on the purchase price of the property she expected to secure the remainder by giving a mortgage upon the stock, implements and crop; that she did not understand the chattel mortgage was not satisfactory; that she paid the $200 on Mr. Stiles'· word that if a further loan could not be secured from Mr. Jackson the defendant would help her; that failing to get the money from the mortgagee, Mr. Stiles could have obtained from another source a loan upon her home of only $1,250; that if he had been able to secure a loan of $1,850 she, with the help of Mrs. Fisher and Mr. Allison, could have raised the $2,000 required by the terms of the contract; that when the defendant heard from Mr. Jackson and she was notified he could not let her have the money, she abandoned the idea of giving a chattel mortgage; that no bill of sale of the stock, etc., was ever tendered to her, no demand made upon her for a commission; that the $200 which she paid had never been returned to her; and that the proposed sale was never confirmed.

Her testimony is corroborated in most particulars by that of F. E. Olson, a son-in-law, who went in the automobile with her to examine the property offered for sale and who was also with her May 16, 1914, when she signed the contract. This is the substance of the testimony which was received when the first motion for a directed verdict was interposed.

F. F. Waffle, a witness for the defendant, was interrogated on direct examination as follows:

"I will ask you to state whether or not on the 19th day of May of this year you saw that contract."

He replied:

"Mr. Stiles showed me the contract, but I didn't read it. He told me that he had received $200 from Mrs. Ross under certain conditions, if she could put the deal through, and she could put the deal through if I would accept her terms; but I didn't read this at that time.

"Q. Did you confirm the sale as he had reported it to you?

"A. Well, no.

"Q. What did you tell him?

"A. He told me that Mrs. Ross could pay us $2,000 cash, if we would give her time on the balance, and I says, 'What security will she give?' And he says, 'A chattel mortgage on the stock.' I told him, No, I couldn't accept a chattel mortgage on the stock, but I would accept the $2,000 cash, if she could give us security, bankable notes, or a first mortgage on Portland real estate, and he said he thought he could put it through that way.

"Q. Then the provision in the contract of the $2,000 cash, and the balance to be arranged, that was approved by you?

"A. In that way; that I would accept—

"Q. To be arranged satisfactorily to you?

"A. Yes, sir; with the proper security.

"Q. The sale was confirmed then, as far as you were concerned, according to that arrangement; $2,000 cash and the balance to be arranged to your satisfaction?

"A. Yes, sir.

"Q. And did Mr. Stiles have authority to retain the $200 that was paid on the purchase price?

"A. Not from me; no."

The witness was further interrogated as follows:

"Q. This is the contract that you had with him, is it not? Examine that paper. Do you recognize those signatures?

"He answered: Yes, sir; those signatures are correct. There is one mistake here, the amount of the price, $3,250. It should read $3,650. Oh, I understand; that was in addition to the lease. I think we covered that. * *

"Q. Would you have sold to Mrs. Ross, if she had complied with the terms of this contract of $2,000 cash and a satisfactory arrangement for the other $2,000?

"A. Yes, sir."

J. W. Hammond, a witness for the defendant, testified that as a loan broker he, about the middle of May, 1914, at the request of Mr. Stiles, examined the house of Mrs. Ross and offered to make a mortgage loan thereon of $1,850, but he never thereafter heard anything about the matter. Mr. Hammond's testimony is corroborated by that of Mr. Stiles who, in referring to Mrs. Ross, says:

"As soon as she paid me the deposit, I immediately got in my machine, after talking with Mr. Hammond, and found I could raise the money on mortgage on her property, and I went down there and talked with Mr. Waffle"

—informing him that Mrs. Ross was going to pay $2,000 in cash and proposed to give a mortgage on the property offered for sale as security for the remainder of the purchase price, which offer was declined by Mr. Waffle who demanded negotiable paper which could readily be converted into cash; that when the witness found there was a mortgage of $800 on the house of Mrs. Ross, it was then ascertained she did not have sufficient funds with which to complete the contemplated purchase.

Mrs. Ross testified that when she learned she was unable to secure any further loan from Mr. Jackson, the man who held a mortgage of $800 on her home, she called upon the defendant to whom she said, "Mr.

Stiles, I came down for that money," meaning the $200 she had left with him. "He says, 'Mrs. Ross, I put that check in the bank for safe deposit'; and he says, 'My bank account has been garnished, and you will have to wait a few days before I can pay you.'" The evidence shows he wrote her several letters promising to repay the money which he had received from her as soon as he could obtain that sum. The defendant referring to these letters says they were written while sympathizing with her for the loss and not because he considered he was under any legal obligation to repay the amount which he had earned as commission for negotiating a sale of the property and as liquidated damages for the expense he had incurred.

1. The phrase in the written contract, referring to the payment of $2,000 on the purchase price, "balance to be arranged," renders uncertain the payment of, or the security for the remainder of the purchase price. The writing is not complete, but ambiguous, and in order to explain the meaning of the phrase last quoted evidence was admissible for that purpose. The testimony given by the witnesses appearing for the state tended to show that the defendant received $200 as a part of the $2,000 to be paid, if the owners of the property would accept a chattel mortgage thereof to secure the payment of $2,000, the remainder of the purchase price, and that if such an agreement could not be consummated, the money so deposited was to be returned. This evidence was sufficient, if believed by the jury, to show that Mrs. Ross parted with the title to the money conditionally and only in case her proposal to give the chattel mortgage should be accepted by the owners of the property: *State* v. *Skinner,* 29 Or. 599 (46 Pac. 368); *State* v.

*Germain,* 54 Or. 395 (103 Pac. 521). No errors were committed in denying the motion to direct a verdict for the defendant.

2, 3. On the direct examination of F. F. Waffle he was asked by the defendant's counsel: "Did you confirm the sale as he had reported it to you?" referring to the defendant's statement of the offer of Mrs. Ross to give a chattel mortgage of the property as security for the payment of $2,000. The witness replied, "Well, no." On cross-examination Mr. Waffle was asked: "So in regard to the terms of the sale, the contract which Mr. Stiles offered you on behalf of Mrs. Ross in his interview—you never confirmed that sale or contract, did you?" An objection to this inquiry on the ground that it called for the conclusion of the witness was overruled and an exception allowed, whereupon the witness replied, "No, sir." In permitting this question to be answered it is maintained that an error was committed. It will be seen that substantially the identical question complained of on the cross-examination of Mr. Waffle was asked by the defendant's counsel of that witness on direct examination.. No objection was interposed to the first inquiry, it is true, but a sense of fairness on the part of the trial court evidently prompted the overruling of the objection, on the theory that the error, if any, was invited: *Capital Lumbering Co.* v. *Learned,* 36 Or. 544 (59 Pac. 454, 78 Am. St. Rep. 792). Mr. Waffle was interrogated by defendant's counsel as follows:

"If Mrs. Ross had given you $2,000 cash and had given you a bankable note of Mr. Olson's, secured by a mortgage, or any other person, for $2,000, you would have transferred the property to her, would you not, described in that contract?

"A. Yes, sir.

"Q. And Mr. Stiles would have kept the $200, would he not?"

An objection to this question having been sustained and an exception allowed, it is maintained that an error was committed in not permitting the witness to answer the inquiry. In discussing this ruling it is stated in the brief of defendant's counsel:

"We contend that the defendant was entitled to this evidence. One of the essential features of a prosecution for larceny is the intent with which the property is retained, and the answer of the witness, Waffle, was relevant to be considered by the jury in determining the question."

In *State* v. *Chapin*, 74 Or. 346 (144 Pac. 1187), it was held that under Section 1956, L. O. L., making it larceny for any bailee of money, etc., to wrongfully convert or neglect or refuse to deliver or account for the money bailed, etc., according to the trust, intent to defraud was not an element of the crime. The decision in that case is conclusive on this point, showing that no error was committed as alleged.

4. An exception having been reserved, it is insisted by defendant's counsel that an error was committed in refusing to give the following requested instruction:

"If you find from the evidence in this case that Waffle, the owner, consented to and approved the terms of the contract of sale at or about the time the same was signed, then I charge you the sale was confirmed according to the terms of the contract, and there would be no larceny by the defendant in retaining the money in controversy and you should acquit the defendant."

This instruction assumes that Waffle's offer to take mortgages of real property in Portland, Oregon, as security for $2,000, upon the payment of a like sum in money, was accepted by Mrs. Ross. This seems to

be the theory of the defendant, but such hypothesis is denied by Mrs. Ross, who testified that no contract to that effect was made. The request does not submit to the jury the question of whether or not such a contract was consummated, and, this being so, no error was committed as alleged.

5. It is maintained that an error was committed in refusing to give the following requested instruction:

"I charge you that under the terms of the contract in evidence when the money, $200, was delivered to the defendant, the title passed with the possession, and the retention of the money would not constitute larceny, and you should acquit the defendant."

What has been said on the denial of the motion for a directed verdict is controlling as to this requested instruction, in refusing to give which no error was committed.

6. It is contended that an error was committed in charging the jury as follows:

"Now, the word 'bailee' is used in this indictment. When property is delivered by one person to another with the understanding that the identical property or its equivalent is to be returned to him, the person who delivered the property is called the bailor, and the one to whom it is delivered is called the bailee; and so in this case if the defendant received the money as alleged in this indictment, he would be the bailee."

It is argued that this part of the charge, though correctly stating a legal proposition, was not based on any testimony, and hence was abstract and misleading. Unless an instruction is predicated on evidence which has been received, it is unrelated to the case on trial and usually erroneous: *Pearson* v. *Dryden,* 28 Or. 350 (43 Pac. 166); *State* v. *Weaver,* 35 Or. 415 (58 Pac. 109); *State* v. *Hogg,* 64 Or. 57 (129 Pac. 115); *Oberlin* v. *Oregon-W. R. & N. Co.,* 71 Or.

177 (142 Pac. 554). The defendant having been charged with the crime of larceny by bailee, the definition of that word or a general description of the relation which it implies was proper, in order that a correct understanding of the term might have been gained by the jury: *State* v. *Anderson,* 10 Or. 448, 459; *State* v. *Hinton,* 56 Or. 428 (109 Pac. 24). An examination of this instruction when construed in connection with the entire charge shows that no error was committed in giving the language complained of.

7. It is insisted that the following instruction was not supported by the evidence, and that an error was committed in saying to the jury:

"If, then, the state has proved to you beyond a reasonable doubt that the sale was not confirmed, and that the $200 were delivered by the complaining witness to the defendant, and that the defendant failed to return the money to the complaining witness on demand, and contrary to the provisions of his trust, then it would be your duty to find a verdict of guilty as charged in the indictment."

The concluding part of this instruction, and to which no exception was taken, reads:

"But if, on the other hand, the state has failed to prove to you beyond a reasonable doubt these various propositions, then it would be your duty to find a verdict of not guilty."

The question presented by the last instruction to which an exception was taken is discussed in considering the motion to direct a verdict for the defendant, and needs no further elucidation.

The judgment should be affirmed, and it is so ordered.                                    AFFIRMED.

MR. JUSTICE EAKIN and MR. JUSTICE McBRIDE concur.

MR. JUSTICE BEAN dissenting.